IN the INTEREST OF: H.H.
and P.R., Plaintiffs;

Juvenile Officer, Respondent,

v.

A.R., Appellant.

WD 80277

Missouri Court of Appeals,
Western District.

OPINION FILED: SEPTEMBER
5, 2017

Anastacia R. Adamson, Kansas City, MO, Edward E. Moore, Kansas City, Counsels for Respondents.

Adam J. Hoskins, Kansas City, MO, Counsel for Appellant.

Before Division Two: Edward R. Ardini, Jr., Presiding Judge, Anthony Rex Gabbert, Judge, Karen King Mitchell, Judge

Anthony Rex Gabbert, Judge

A.R. (Mother) appeals the circuit court's judgment terminating her parental rights to her biological children, P.R. and H.H. Mother asserts four points on appeal. In her first, second, and third points, Mother contends that there was not clear, cogent, and convincing evidence to support the court's termination of her parental rights pursuant to Sections 211.447.5(2)[1], 211.447.5(3), and 211.447.5(6), respectively. Mother's fourth point contends that the court erred in finding termination of parental rights to be in the best interest of the children pursuant to Section 211.447.6. We affirm.

## Procedural and Factual Background

The evidence, in the light most favorable to the court's judgment, was that P.R. was born September 6, 2012, and was four years old at the time of trial. P.R. has never lived with Mother. On the day P.R. was born, Mother went to the hospital for symptoms of preterm labor. Medical staff implored Mother to stay for treatment and advised her that, if she left, the baby might be harmed. Mother left the hospital against medical advice. She returned within hours and P.R. was born at only twenty-

---

1. All statutory references are to the Revised Statutes of Missouri as supplemented through January 1, 2017, unless otherwise noted.

four weeks gestation. Mother admitted that, during her pregnancy with P.R., she repeatedly smoked marijuana, exposing P.R. to Tetrahydrocannabinol (THC). Because of P.R.'s premature birth, she required hospitalization for the first seven months of her life, during which time Mother was provided training and assistance in learning about P.R.'s special needs. When P.R. was ready for discharge from the hospital in late April, 2013, Mother was not ready to assume custody of P.R. because Mother had not demonstrated an ability to provide for the child's medical needs and did not have stable or appropriate housing. Mother moved residences multiple times in 2013. When P.R. was released from the hospital, Mother planned to reside with a sister who was awaiting trial on felony charges and whose parental rights to her own children had been terminated. Mother had been the victim of domestic violence, including with P.R.'s father whom Mother alleged slapped and choked her and whom was asked to leave Children's Mercy Hospital after becoming aggressive with Mother while P.R. was hospitalized there.

In May of 2013, the Juvenile Officer filed a petition alleging the aforementioned to support that Mother had exhibited a pattern of neglect regarding the child and that P.R. was without proper custody, support or care necessary for her well-being and subject to the jurisdiction of the court pursuant to Section 211.031.1. The petition alleged that the actions of Mother placed the child at risk of further harm, or the same or similar abuse or neglect, absent the intervention of the court. On July 15, 2013, the circuit court sustained the allegations of the Juvenile Officer's Petition. Approximately one month later, on August 13, 2013, the court held a dispositional hearing to determine placement of the child. The court found that reasonable efforts had been made to return the child to Mother and/or shorten the length of time the child had been removed from the home, but that placement of the child with Mother was contrary to the child's best interests. The court found that, prior to the dispositional hearing, the Missouri Department of Social Services, Children's Division, had provided Mother with a parent aide to supervise visits, individual therapy, DRAGNET (Drug Resistance by Achieving Goals Through Networking Education & Training), substance abuse treatment, and a psychological evaluation with a parenting assessment. The child was ordered to remain in the care and custody of the Children's Division for appropriate placement, with Mother receiving visitation supervised by a parent aide or the Children's Division. Mother was ordered to participate in individual therapy, substance abuse treatment, and random drug testing.

On October 21, 2013, Mother gave birth to H.H. at twenty-five weeks gestation. Mother left the hospital against medical advice while the child was hospitalized in the Neonatal Intensive Care Unit of Research Hospital. On at least one occasion after the child's birth, and while the child was still hospitalized, Mother exhibited violent and aggressive behaviors toward Research Hospital staff such that staff members physically restrained her. On October 23, 2013, the Juvenile Officer filed a petition alleging that H.H. was without proper care, custody or support necessary for her well-being and subject to the jurisdiction of the court pursuant to Section 211.031.1 due to Mother's neglect toward H.H. and H.H.'s sibling, P.R. The Juvenile Officer alleged that Mother's history and current behavior placed the child at risk of further harm or neglect absent the court's intervention. The court entered an order of temporary protective custody, ordering H.H. to be placed with the Children's Division in an appropriate licensed placement

upon discharge from the hospital, with Mother to have supervised visitation by the Children's Division or a Parent Aide. An Order of Protective Custody was entered on October 25, 2013. An Amended Petition was filed on December 9, 2013, and on that same date Mother stipulated to the allegations in that petition. The circuit court sustained the allegations and assumed jurisdiction over the child. A dispositional hearing was held on January 21, 2014. At that time, H.H. still remained in the Neonatal Intensive Care Unit of Research Hospital. The court found that, along with Mother's use of marijuana during her pregnancy with H.H., Mother had also tested positive for cocaine during her pregnancy with the child. The court also found that Mother was involved in an altercation with a male visitor to the hospital shortly before the birth of H.H. The court found that Mother had been unable to achieve safe reunification with H.H.'s sibling, P.R., despite being provided and participating in services.

A permanency hearing for P.R. and a case review for H.H. was held on April 28, 2014. The court found that, since the date of the prior hearing, Mother had moved into a new apartment, was participating in individual therapy, and had completed a psychiatric evaluation. The court found Mother still in need of services before the children could be safely returned to her care.

A permanency hearing for P.R. and a case review for H.H. was held on June 16, 2014. At that hearing the court found that, since the date of the prior hearing, Mother had been participating in individual therapy. The court also found that Mother had tested positive for marijuana but had not engaged in substance abuse treatment. Mother was ordered to complete substance abuse treatment and to receive Parent Aide services forty hours per month.

On August 14, 2014, a permanency hearing was held for both P.R. and H.H. The court concluded that, due to Mother's lack of participation and progress in services, and inability to verify testing clean from substances, the children could not be safely placed in Mother's care.

A permanency review hearing was held for both children on November 4, 2014. The court found that, since the date of the prior hearing, Mother had been authorized for individual therapy but had not been consistently attending. Mother was enrolled in substance abuse treatment but had not been participating in random drug testing and had not responded to the court to test when that option was given to her. At the time of that hearing, Mother had moved from her previous residence and claimed to be living in the State of Kansas, but refused to provide a specific address to the Children's Division. While the permanency goal for the children following prior hearings had been H.H.'s reunification with mother and concurrent goals of reunification/termination of Mother's parental rights for P.R., following this hearing the permanency goal for both children became termination of Mother's parental rights. P.R. was two years old and H.H. was one year old. The court ordered that Mother continue to be provided services.

The court held a permanency hearing on March 23, 2015. At the time of that hearing, Mother had housing but was to lose her housing voucher soon thereafter. The court found that, since the date of the prior hearing, Mother had been more consistent with individual therapy but had not been attending substance abuse treatment regularly. The Children's Division had provided Mother with referrals for substance abuse treatment and Mother had started treatment at two different locations. She did not successfully complete either and admitted recent drug usage.

In April of 2015, Mother gave birth to a male child, D.N.[2] On July 17, 2015, the court assumed jurisdiction over the child. The court found that, at D.N.'s birth, Mother tested positive for marijuana. The court further found that mother had refused to submit to a hair test and that the Children's Division had been unable to visit Mother's home to determine if any safety issues were there. D.N. was placed in the same foster home in which H.H. resided. D.N. died on or about September 1, 2015. The children's caseworker testified that, because Mother had no home and had inconsistent contact with the Children's Division, telephoning Mother was "the only way that I was really able to stay in touch with her." The record reflects that, Children's Services protocol is to inform parents of the death of a child in person and not by telephone. The Children's Division asked Mother's parent aide to take Mother to the hospital where D.N. was located. The parent aide picked Mother up from Wal-Mart on 40 Highway in Kansas City and took Mother to the hospital. Mother held the deceased child for approximately one hour and was visibly upset by D.N.'s death. The caseworker testified that, Mother requested an autopsy be performed on the baby but that it was the decision of the hospital staff and coroner to not perform one.

A permanency review hearing was held on October 26, 2015. The court found that a barrier to reunification of P.R. and H.H. with Mother was that Mother was not cooperative, was not visiting the children, and that there was an overall "lack of participation." Termination of Mother's parental rights remained the permanency goal for both children. Services continued to be available to Mother.

On January 28, 2016, the Juvenile Officer filed a petition to terminate Mother's parental rights. A hearing on that petition was held September 2, 2016. At that hearing, the court took judicial notice of the court's prior orders, judgments, and findings from the aforementioned permanency hearings regarding P.R. and H.H. The court also took judicial notice of the case file regarding D.N.

Evidence presented at the termination of parental rights hearing showed that the Children's Division had provided multiple parent aides to work with Mother throughout the pendency of the case, but that many of the parent aides discharged Mother from services due to Mother's aggression with parent aides, failure or inability to take direction, and lack of consistency with participation in visitation. One parent aide discussed with Mother that the children should not be around second-hand smoke because of their significant respiratory and medical issues, but Mother stated that she was unwilling to stop smoking and admitted continued marijuana use. Mother's visitations with the children were often cut short because of Mother's hostility and disruptive behaviors. A parent aide testified that Mother's behaviors were scary for the children; when Mother was disruptive the children would cry and go to the case worker, nurse, or foster mother for comfort. This parent aide also testified that Mother treated P.R. and H.H. differently—that she had more contact with H.H. and was determined to get H.H. back in her care. The parent aide testified that Mother had stated on several occasions that, if it was not for the situation that P.R. had put her in, Mother would have H.H. at home. Mother cancelled some visitations with her children when only one

---

**2.** D.N.'s case file was not provided with the record on appeal. Very little information is in the record on appeal regarding this child.

child was available to visit, stating that she would visit either both or none at all.

The evidence showed that P.R. and H.H. continue to have significant medical needs. P.R. has a tracheotomy tube, hearing and speech impairment, and has a full-time nurse to help provide her care. H.H. has slight cerebral palsy, white matter on her brain, a rotated hip, and aspiration issues. These medical issues continue to require extensive medical appointments as well as daily medical treatment.

On November 8, 2016, the court entered its judgment terminating the parental rights of Mother to both children. This appeal follows.

## Standard of Review

Termination of parental rights is permitted when a statutory ground for termination is supported by clear, cogent, and convincing evidence and when termination is determined to be in the best interests of the child by a preponderance of the evidence. *In re A.M.S.*, 272 S.W.3d 305, 308 (Mo. App. 2008). "When the trial court finds multiple statutory grounds for termination of parental rights, in order to affirm the judgment this Court need only find that one of the statutory bases was proven and that termination was in the best interests of the child." *In Re T.R.W.*, 317 S.W.3d 167, 170 (Mo. App. 2010). In our review, we "defer to the [circuit] court's ability to judge the credibility of witnesses and will affirm the judgment unless there is no substantial evidence to support it, it is contrary to the evidence, or it erroneously declares or applies the law." *Interest of K.A.W.*, 133 S.W.3d 1, 11 (Mo. banc 2004).

## Point II—Termination Pursuant to Section 211.447.5(3)

The court terminated Mother's parental rights pursuant to several grounds includ-ing grounds specified under Sections 211.447.5(2), 211.447.5(3), 211.447.5(6), and found termination to be in the children's best interest pursuant to Section 211.447.6. Mother challenges the court's Judgment on all grounds. As we need only find one statutory ground proven to affirm the court's judgment when termination is in the best interests of the child, we address the court's Judgment as to Section 211.447.5(3) and Section 211.447.6, corresponding with Mother's second and fourth points on appeal.

Section 211.447.5 (3) allows the court to terminate parental rights to a parent when:

> The child has been under the jurisdiction of the juvenile court for a period of one year, and the court finds that the conditions which led to the assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to exist, that there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future, or the continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home.

In determining whether to terminate parental rights under this subdivision, the court is required to consider and make findings on the following factors: 1) compliance with terms of a social service program entered into with the Children's Division, 2) the success or failure of the efforts of the juvenile officer, Children's Division, or other agency to aid the parent on a continuing basis in adjusting his or her circumstances or conduct to provide a proper home for the child, 3) a mental condition rendering the parent unable to knowingly provide the child the necessary care, custody and control, and 4) a chemi-

cal dependency which prevents the parent from consistently providing the necessary care, custody and control over the child and which cannot be treated so as to enable the parent to consistently provide such care, custody and control. § 211.447.5 (3) (a)(b)(c)(d). These factors "are not separate grounds for termination by themselves, but rather categories of evidence, that the court may consider along with all other relevant evidence in determining whether grounds for termination exist under § 211.447.5 (3)." *In re S.Y.B.G.*, 443 S.W.3d 56, 60 (Mo. App. 2014). Although the court should consider and make findings on all factors, proof of just one factor is sufficient to support termination of parental rights. *Id.*

■ ·Mother contends that the circuit court erred in terminating her parental rights pursuant to Section 211.447.5(3) because there was not clear, cogent, and convincing evidence to support the court's conclusion that harmful conditions persist with little likelihood the conditions will be timely remedied. Mother argues there was insufficient evidence to show that Mother was not making progress on the terms of social service plans, that Mother was not adjusting her circumstances to provide a proper home for the children, and that a mental condition or chemical dependency renders Mother unable to provide care. Mother further argues that the court made no specific finding of a dangerous condition. We find no error.

The court found that the conditions which led to the assumption of jurisdiction over the children persist, and that conditions of a potentially harmful nature continue to exist. The court found that there was little likelihood that the issues could be remedied at an early date so that the children could be placed with Mother. The court supported these findings with evidence from the record in its statutorily required analysis of the factors set forth in Section 211.447.5(3) (a)(b)(c) and (d). Mother claims, nevertheless, that the court "committed a dispositive legal error" by failing "to make a specific articulated finding of the presence of a dangerous condition and, instead, simply recited the statutory language." Mother cites *In re L.J.D.*, 352 S.W.3d 658 (Mo. App. 2011), to support her contention that the court committed a dispositive legal error. Mother's reliance on *In re L.J.D.* is misplaced.

In *In re L.J.D.*, the court's error was in terminating parental rights pursuant to Section 211.447.5(3) without making *any* findings that the conditions which originally justified jurisdiction still existed or that a dangerous condition existed at the time of termination. *Id.* at 671. Further, the evidence at trial showed that the conditions which led to the assumption of jurisdiction had been rectified. *Id.* at 667. The circuit court terminated the mother's rights under Section 211.447.5(3) for failure to comply with all terms of her social service plans. *Id.* at 671. Our Eastern District reversed concluding that there was no clear and convincing evidence to support termination of parental rights because, "failure to achieve progress toward social service plan goals only supports termination of parental rights when a dangerous condition is left uncorrected as a result." *Id.* After reviewing the record, the Eastern District disagreed with the court's conclusion that the mother had made only minimal progress toward the completion of the service agreements and disagreed with the court's conclusion that Mother had failed to substantially accomplish the goals of her agreements. The Eastern District declined to accept the Department of Social Service's argument that, the termination of parental rights should still be affirmed even if the mother had successfully accomplished the goals of her service agreements because the trial court "is still

permitted to terminate parental rights under Section 211.447.5(3) if there is substantial evidence of the continued presence of a dangerous condition." *Id.* at 672 and 674. The Eastern District found no evidence of an existing dangerous condition in the record and noted that the trial court had made no finding regarding a specific dangerous condition. *Id.* at 674. The court concluded that, although the trial court's findings might have suggested that Mother was not a "highly capable parent," they did not amount to identification of an existing dangerous condition. *Id.* It was in this context that the court then stated: "While the trial court is statutorily required to make specific findings on each factor of Section 211.447.5(3), these findings are not a substitute for an articulated finding of the presence of a dangerous condition." *Id.* The court explained that "the subsections provide an organizational framework through which the trial court examines much of the evidence in order to determine whether the parent has failed to remedy a condition, and whether that failure is likely to continue." *Id.*

Here, Mother's argument that the court "simply recited the statutory language" and "never described how the conditions leading to the assumption of jurisdiction related to the conditions existing at the time of trial" is simply not accurate. It was not error for the court to recite statutory language in its judgment, as Mother suggests. It would have only been error if the court had failed to support that statutory language with clear and convincing evidence from the record. Here, the court supported its statutory findings. To support its findings that the conditions which led to the assumption of jurisdiction still persist and that conditions of a potentially harmful nature continue to exist, the court used the factors set forth in 211.447.5 (3) (a)(b)(c)(d) as an organizational framework in examining the evidence and reaching

the determination that Mother failed to remedy the conditions leading to the assumption of jurisdiction, and that that failure was likely to continue.

In support of its conclusion that the conditions which led to the assumption of jurisdiction still persist and conditions of a potentially harmful nature continue to exist, the court found, pursuant to Section 211.447.5(3)(a), that Mother had failed to make progress in complying with the terms of the social service plan entered into with the Children's Division and was unable to provide for the children's emotional and physical needs. The court found that "Mother's inconsistent engagement in services, pattern of substance abuse, anger management issues, and failure to obtain and maintain stable housing are repeatedly and continuously evidenced in this case[,]" despite "the provision of numerous services by the Children's Division and three years to meaningfully and successfully participate." At the time of the termination hearing, Mother's visitation with the children was still being supervised and Mother had not consistently participated in that supervised visitation. The court additionally found that, although Mother was aware that, due to the children's unique and significant medical issues exposure to smoke or smoke residue could harm the children, Mother did not attempt to stop smoking. These findings are supported by the record.

In support of its conclusion that the conditions which led to the assumption of jurisdiction still persist and conditions of a potentially harmful nature continue to exist, the court found, pursuant to Section 211.447.5(3)(b), that, to facilitate reunification Mother was provided parent aide services, individual therapy, parenting skills/education, mental health services, substance abuse treatment, and random drug testing. The court found that, "[d]e-

spite Children's Division's provision of numerous services to address the barriers to reunification, Mother has affirmatively failed to adequately engage throughout the duration of the underlying cases." The court further found that, "all of the circumstances and conditions, including Mother's mental condition and chemical dependency, prevent her from adequately providing for the safe and continuing care, custody, and control of the children." These findings are supported by the record.

In support of its conclusion that the conditions which led to the assumption of jurisdiction still persist and conditions of a potentially harmful nature continue to exist, the court also found, pursuant to Section 211.447.5(3)(c), that Mother had been diagnosed with "Abuse/Neglect of a Child, Physical Abuse of Adult by Partner, Mood Disorder, Cannabis Abuse, and Rule-Out Borderline and/or Antisocial Personality Disorder," and that Mother's untreated mental issues affected her ability to reunify with her children. An intelligence test administered to Mother revealed her intelligence quotient (IQ) as being 62, suggesting a permanent mild intellectual disability. The court found that, despite Mother's psychologist's recommendations of services, Mother had inconsistently participated in the recommended services to address her mental health issues. The court found that, although the psychological evaluation of Mother had been completed three years prior to the hearing, there was no credible evidence that Mother had satisfactorily or appropriately addressed the issues raised in that evaluation. The record supports these findings. The record shows that Mother inconsistently participated in therapy, never completed substance abuse

treatment, inconsistently visited her children, and was hostile to parent aides who attempted to provide parenting advice. Due to Mother's behaviors and failure to progress, Mother's visitation with the children remained supervised.

In support of its conclusion that the conditions which led to the assumption of jurisdiction still persist and conditions of a potentially harmful nature continue to exist, the court found, pursuant to Section 211.447.5(3)(d), that Mother's chemical addiction prevented her from consistently providing the children with the care necessary for their well-being. The record supports this finding. The record reflects that, even after Mother was made aware after the birth her first child, P.R., that Mother's drug use was a concern, she used both marijuana and cocaine during her pregnancy with H.H. Both P.R. and H.H. were born dangerously premature and with severe and on-going medical issues. After H.H.'s birth, concerns regarding Mother's drug use continued to be reiterated to Mother. Yet, Mother exposed her third[3] child, D.N., to prenatal marijuana use. Although Mother was provided substance abuse services to facilitate reunification with her children, Mother was unsuccessfully discharged from treatment programs at Samuel Rogers, the Guadalupe Center, Renaissance West, Imani House, and Free and Clean. Mother submitted to some urinalysis testing, testing positive for THC and cocaine in July of 2013, THC in May of 2014, and THC in January of 2015. Mother failed to appear for numerous other scheduled urinalysis tests and flatly refused to submit to a court-ordered hair follicle test.

The record abounds with examples of Mother's lack of meaningful participation in provided services and even purposeful

---

**3.** There is evidence in the record that Mother had a stillborn child prior to the birth of one

or more of her other children.

disruption of those services. During the termination of parental rights hearing the court was forced to pause the proceedings to reprimand Mother for repeated outbursts. An ongoing barrier to Mother's receipt of services during the three years those services were provided was Mother's hostility toward service personnel and unwillingness and/or inability to appreciate or accept the offered assistance. The court concluded in its Judgment that "[s]aid actions and outbursts of Mother [during court] are consistent with the credible testimony provided by [service workers] describing Mother's aggressive behavior with parent aides and other workers throughout the pendency of the underlying case." We agree that Mother's courtroom display evidenced that Mother continues to be unable to conform to reasonable behavioral expectations beneficial to both her and her children's best interests.

Mother disagrees that there was clear, cogent, and convincing evidence to support the court's conclusions arguing that the evidence actually reflects that she was "making progress" in complying with the terms of the social service plan and, specifically, "was progressing with her individual mental health counseling, parent aide services, visits with the children, and substance abuse treatments." Mother argues that this progress was understandably disrupted when her infant son died and that his death caused her "skepticism with the Children's Division" which, in turn, decreased her willingness to engage in the services offered by the Children's Division and the Juvenile Officer. Mother contends that the court failed to properly acknowledge her progress and the impact of her son's death, thereby rendering the court's termination of Mother's parental rights pursuant to Section 211.447.5(3) in error. We find these claims without merit.

Although the record reflects that, after D.N. was born in April of 2015, and until his death in September of 2015, Mother more consistently participated in parent aide services, therapy, and visitation with the children, there is no evidence in the record that this limited duration of participation, which significantly decreased and/or ceased after the death of D.N., led to progress; increased participation is not equivalent to progress. Although Mother states that, after the birth of D.N., she "was testing clean on her urinalyses and was in treatment at Imani House," Mother was unsuccessfully discharged from Imani House and Mother did not submit to all drug testing requests. While Mother showed more consistency with visiting the children in March and April of 2015, a case worker testified that Mother sporadically ended many of these visits early because she disliked being redirected by the parent aide.

We find clear and convincing evidence to support the court's judgment of termination of parental rights pursuant to Section 211.447.5(3). Substantial evidence supports that P.R. and H.H. have been under the jurisdiction of the court for a period of one year and that the conditions which led to the assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to exist, such that there is little likelihood that those conditions will be remedied at an early date so that P.R. and H.H. can be reunified with Mother in the near future. Mother's second point on appeal is denied.

### Point IV—Best Interests Determination Pursuant to Section 211.447.6

Mother contends that the court's findings regarding the statutory factors set forth in Section 211.447.7 were contrary to the evidence, leading to the erroneous con-

clusion that termination of parental rights was in the best interest of the children pursuant to Section 211.447.6. Mother specifically contends that, in considering the factors and finding termination to be in the best interest of the children, the court failed to consider the totality of the circumstances as evidenced by its failure to recognize or acknowledge how the death of Mother's son impacted Mother's participation in visitation and services. Further, that while the court honed in on certain evidence, contrary evidence was also presented which was ignored by the court in its findings.[4] We find no error.

First, we note that it was the trial court's province to weigh the evidence, not ours. *J.A.R. v. D.G.R.*, 426 S.W.3d 624, 626 (Mo. banc 2014). "[C]ircuit courts are better positioned to determine witness credibility and weigh evidence in the context of the whole record than an appellate court." *Id.* Conflicting evidence is reviewed in the light most favorable to the trial court's judgment. *Id.* "When the evidence poses two reasonable but different inferences, this Court is obligated to defer to the trial court's assessment of the evidence." *Id.* (quoting *In re Adoption of C.M.B.R.*, 332 S.W.3d 793, 815-816 (Mo. banc 2011)). We are not at liberty to re-weigh the evidence.

Second, there is no direct evidence in the record that, but for the death of D.N., Mother would be in a position to have P.R. and H.H. returned to her in the reasonably foreseeable future. Mother did not testify.

Although Mother argues that the court erred in not inferring from Mother's increased participation in services after D.N.'s birth, and decreased participation after his death, that Mother would have improved her circumstances if her son had not died, the court chose not to draw this inference and we are not at liberty to do so on appeal.[5] Regardless of what inferences might have been drawn, evidence regarding Mother's reaction to D.N.'s death was before the court. We presume that the court considered this evidence and chose not to find it compelling. *In re Adoption of C.M.*, 414 S.W.3d 622, 660 (Mo. App. 2013). "All fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached." Rule 73.01.

■ Upon reviewing the record, including the totality of the circumstances apparent from the evidence, we find that a preponderance of the evidence supports the court's conclusion that termination of parental rights was in P.R. and H.H.'s best interest. At the time of trial, P.R. was four years old and H.H. was three years old. Neither had ever resided with Mother. Neither P.R. nor H.H. possess significant emotional ties to Mother as evidenced by the children's negative reactions to Mother during visitation and their tendency to approach placement providers, nurses, or parent aides for comfort when Mother is present. Mother was loud, hostile, and ar-

---

4. Section 211.447.7 requires the court to evaluate and make findings on several factors when considering whether to terminate the parent-child relationship pursuant to Section 211.447.5(3). Findings need not be made for all of the factors, but the court must base its conclusion regarding termination of parental rights upon the totality of the circumstances. *In re J.M.T.*, 386 S.W.3d 152, 162-63 (Mo. App. 2012). Here, the trial court analyzed and made findings on all of the factors set forth in Section 211.447.7.

5. Further, this is not the only inference that could be drawn from this evidence. Given Mother's lengthy failure and/or refusal to complete tasks necessary to secure the return of P.R. and H.H. to her care prior to D.N.'s birth, evidence of Mother's increased participation after D.N.'s birth could suggest that Mother was simply more motivated to secure D.N.'s return than P.R. or H.H.'s return.

gumentative with service workers during visitations, contributing to the children's discomfort with and distrust of her. Mother was provided numerous types of services, all of which were designed to facilitate reunification with the children, but Mother never progressed beyond supervised visitation. Given that the record supports the children's lack of attachment to Mother, that there is no reasonable likelihood that the children could be returned to Mother in the near future due to Mother's ongoing mental health, substance abuse, and stability issues, and that continuation of the parent-child relationship greatly diminishes the children's prospects for early integration into stable and permanent homes, we find no error in the court's conclusion that termination of Mother's parental rights was in the best interest of the children. Mother's fourth point on appeal is denied.

## Conclusion

We conclude, therefore, that the circuit court did not err in terminating Mother's parental rights pursuant to Section 211.447.5(3) or in finding termination of parental rights to be in the best interest of the children pursuant to Section 211.447.6. We affirm the circuit court's judgment.[6]

All concur.

---

**6.** As we need only find one statutory ground to affirm the court's judgment, we do not address and take no position on Mother's contentions that the court erred in terminating her parental rights pursuant to Section 211.447.5(2) and Section 211.447.5(6).