Alok Ahuja, Judge
C.F. (Father) appeals the circuit court's judgment terminating his parental rights over his three children. We reverse.
*92 Factual Background
Father and J.D. (Mother) had three biological children: a daughter, A.F. (born in October 2007); and two sons, J.C.F. (born in April 2009), and J.A.F. (born in January 2014).
On April 17, 2015, the children were removed from their school and daycare following allegations that (1) Father had engaged in acts of domestic violence against Mother, which may have contributed to her disappearance; and (2) Father refused to obtain necessary mental health services for A.F. The children were placed in licensed foster homes.
On the same day, the Juvenile Officer filed a petition in the Circuit Court of Jackson County, which prayed that the circuit court take custody of the children. The Juvenile Officer later filed a First Amended Petition, which alleged:
The children ... are without proper care, custody and support necessary for their well-being and are subject to the jurisdiction of this Court pursuant to 211.031.1 RSMo in that the father neglects the children and their mental health needs.
• The mother's family has filed a Missing Person's [sic] report on the mother. The mother was last seen on or about September 11, 2014, when the child, [A.F.], witnessed her father push her mother.
• Additionally, within the past few months, the child, [A.F.], has suddenly began to exhibit symptoms consistent with trauma such as personality changes, including that she has stopped talking and wets herself frequently. The child's school contacted the father in an attempt to offer counseling services to the child because of her changes in personality and wetting herself, but the father refused to obtain recommended services for the child.
• The children are at risk of further harm or neglect absent the intervention of this Court.
On June 5, 2015, Father entered into a stipulation in which he waived his right to a trial on the allegations of the Juvenile Officer's First Amended Petition, and stipulated "that the Juvenile Officer has sufficient evidence of a clear, cogent, and convincing nature to sustain the allegations in the petition."
On June 17, 2015, the circuit court assumed jurisdiction over the children, and ordered that they be committed to the custody of the Children's Division for appropriate placement. The court ordered supervised visits to be conducted in Father's home. A disposition hearing was held on July 13, 2015, at which the court declared the permanency goal to be reunification. To that end, the court ordered both the children and Father to complete individual therapy.
On December 8, 2015, Father filed a motion seeking to have the court release its jurisdiction over the children, and place the cause on an expedited track for reunification. The Juvenile Officer and the Guardian ad litem opposed Father's motion. On January 13, 2016, a commissioner issued Findings and Recommendations which recommended that Father's motion be denied, and that the court continue to exercise jurisdiction over the children. The commissioner's Findings and Recommendation were adopted by the court on February 4, 2016. The Findings state:
The primary barrier to reunification for the father with the children is his inability to control his anger and the immediate and direct impact this has on his ability to make and prioritize decisions regarding the welfare of his children.
*93 The father has obstructed the ability of the Children's Division to provide appropriate services to the father to aid in the process of reunification. The father has repeatedly engaged in shouting, over-talking, threatening and aggressive language and behavior toward the case worker and other professionals involved in his case such that they are unable to work with the father. The father refuses to accept the professional's interventions or advice. The father has been dishonest and evasive in addressing his circumstances and his prior history, which impacts the efficacy of services. An example of this is the father's refusal to testify when called as a witness in these proceedings: he simply left the court house and did not return.
The Findings also stated that Father "has attempted to intimidate his children into making statements regarding reunification." The Findings noted that Father had rejected the therapist recommendations offered by the Children's Division, and had instead opted to retain therapists of his own choosing. The court found Father's therapists not to be credible. The court also found "no basis to infer that the father has made any progress in therapy to address his anger control or his understanding of the impact his behavior has on the welfare of his children." The court discussed the reported allegations of sexual abuse by the Father, and noted that Father's claim of mistaken identity did not make sense in context; but the court ultimately refused to make any finding concerning the credibility of the sexual abuse report.
The court ordered the Father to participate in the following services: (1) individual therapy with a domestic violence component; (2) family therapy upon recommendation by the children's therapist; and (3) intensive group parenting education classes. The court also included detailed instructions regarding visitation (which was no longer to be conducted at Father's home); the instructions included a warning that "[a] visit shall be terminated upon aggressive or unstable behavior of the father." The next court hearing was scheduled for April 6, 2016.
Caseworkers from the Department of Social Services prepared a Permanency Plan and Report for the April 2016 hearing. The Report concluded that Father "is physically able to care for his children," and "appears to be bonded with the children and care for the children." The Report also found, however, that Father: "has a history of not always protecting his children"; was manipulative; exhibited multiple behavioral signs typical of domestic violence perpetrators; struggled with impulse control and anger management; and had inappropriate emotional outbursts during visits with the children and when interacting with caseworkers. As a result, "[t]he Children's Division recommend[ed] that the goal be changed from reunification to adoption."
On April 8, 2016, the commissioner issued Findings and Recommendations. The commissioner found that Father's "inability to control his anger," and the effect this had on his children, remained the primary obstacle to family reunification. The Findings and Recommendations found that the Children's Division had engaged in reasonable efforts to achieve reunification by providing or offering a variety of services to Father and the Children, that the children had been under the jurisdiction of the court for more than twelve consecutive months, and that "there is [no] reasonable likelihood that reunification may be accomplished within the foreseeable future." Accordingly, the commissioner recommended "that permanency by way of termination of parental rights/adoption shall now be the *94 goal." On April 12, 2016, the court adopted the commissioner's Findings and Recommendations.
The Juvenile Officer filed Petitions for Termination of Parental Rights as to all three children on July 19, 2016.[1] Trial was held over the course of four days in January and February of 2017. The court entered judgments in April 2017, amended nunc pro tunc in May 2017, which terminated Father's parental rights over each of the children. The court's judgments as to the three children are identical in all material respects; we accordingly refer to them as a single "judgment" in this opinion.
The judgment found that termination of Father's parental rights was justified on three separate statutory grounds. First , the circuit court found that termination was justified based on Father's abuse or neglect of the children under § 211.447.5(2).[2] The court noted that Father had stipulated in June 2015 that he had neglected the children. The court also found under § 211.447.5(2)(a) that Father "suffers from a mental condition that is either permanent or such that there is no reasonable likelihood ... [it] can be reversed and which renders Father unable to knowingly provide the child[ren] with the necessary care, custody and control." The court found the psychologist retained by the Children's Division, William McDonnell, to be credible in his diagnosis of Father with "Personality Disorder NOS [ (meaning, "Not Otherwise Specified"),] possibly antisocial or narcissistic." The judgment found that Father is "in denial and minimizes the significance of his mental condition and behaviors," which established that "Father cannot or will not address his mental health diagnosis." The judgment also found Father "demonstrates no insight into his mental condition nor willingness to address its role in causing the child[ren] to remain in care." The court found that Father "refused to participate in the type of therapy recommended by his psychological evaluation." The court noted that Father had instead opted to hire his own therapists, and found that he "did not fully disclose the relevant issues" and information to those therapists. The court accordingly gave little weight to the testimony of Father's therapists, and to the treatment they had provided to Father.
Addressing the other factors listed in § 211.447.5(2), the court found: no evidence that Father had a chemical dependency (§ 211.447.5(2)(b)); no evidence Father had "committed severe or recurrent acts of physical, emotional or sexual abuse toward ... the children" (§ 211.447.5(2)(c));[3] and no evidence Father had failed to provide "adequate food, clothing, shelter, education, or other care necessary for the child[ren]'s physical, mental or emotional health and development." § 211.447.5(2)(d).
As a second basis for termination, the court found under § 211.447.5(3) that the *95 children have been under the jurisdiction of the court for a period of more than one year, and that "[t]he conditions which led to the assumption of jurisdiction still persist and conditions of a potentially harmful nature continue to exist." The judgment found that Father failed or refused to "sincerely participat[e] in ordered services to address domestic violence and neglect"; Father failed "to rectify his parenting behaviors to ensure a safe home for the child and siblings in the future"; and Father continued "to deny or minimize his responsibility for domestic violence in the home." The judgment then addresses the factors listed in § 211.447.5(3). Under § 211.447.5(3)(a), the court found that Father "has failed to make progress in complying with the terms of the social service plan entered into with the Children's Division," in large part based on the fact that he had failed to sincerely address the mental health condition diagnosed by McDonell. The court also noted that Father had been unable to control his emotions and anger during visits with the children, during interactions with caseworkers, and during court proceedings. With respect to § 211.447.5(3)(b), the court found that, despite the services offered or provided to him, Father had "failed to adjust his circumstances and conduct on a continuing basis so that he can provide a proper home for the [children]," since he had "fail[ed] and refuse[d] to address the reasons the children are in care," and "remain[ed] in denial regarding the impact his actions have had on the children." Under § 211.447.5(3)(c), the court found that Father suffered from a mental condition which renders him unable to provide the children with appropriate care, based on the same grounds described in connection with the court's abuse or neglect finding. As with its abuse or neglect finding, the court found under § 211.447.5(3)(d) that there was no evidence that Father suffered from a chemical dependency.
Third and finally, the court found that termination of Father's parental rights was justified under § 211.447.5(6). The judgment concludes, "[b]ased on the findings of fact [relating to abuse or neglect and failure to rectify] which are incorporated herein," that Father was "unfit to be a party to the parent and child relationship," because conditions existed which rendered him unable to provide for the children's needs, and which were unlikely to be rectified in the reasonably foreseeable future.
After finding that grounds for termination existed, the court found termination to be in the best interests of the children. Although the judgment found that the children have emotional ties with Father, "the depth of that bond is relatively unknown" due to the children's inability to maturely discuss those issues. The judgment also found that Father had provided financial or other support to the children while they were in the court's jurisdiction, that he had maintained regular supervised visits with the children, and that "[t]here was no evidence of deliberate acts by any parent which the parents knew or should have known that subjects the child[ren] to a substantial risk of physical or mental harm." Nevertheless, the judgment noted that Father's conduct during visitation "was not conducive to" success "and overall interaction with the children," that he had "not made sufficient progress in any services," that "[a]dditional services would not be likely to" enable reunification, and that Father had not shown an "interest in or a commitment to change."
Father appeals.
Standard of Review
Termination of parental rights is permitted when a statutory ground *96 for termination is supported by clear, cogent, and convincing evidence and when termination is determined to be in the best interests of the child by a preponderance of the evidence. When the trial court finds multiple statutory grounds for termination of parental rights, in order to affirm the judgment this Court need only find that one of the statutory bases was proven and that termination was in the best interests of the child. In our review, we defer to the circuit court's ability to judge the credibility of witnesses and will affirm the judgment unless there is no substantial evidence to support it, it is contrary to the evidence, or it erroneously declares or applies the law.
In Interest of H.H. , 525 S.W.3d 551, 556 (Mo. App. W.D. 2017) (citations and internal quotation marks omitted). "Evidence is clear, cogent and convincing when it instantly tilts the scales in favor of termination when weighed against opposing evidence and leaves the fact-finder with the abiding conviction that the evidence is true." In Interest of K.M.A.-B , 493 S.W.3d 457, 467 (Mo. App. E.D. 2016) (citation and internal quotation marks omitted).
Discussion
On appeal, Father challenges the circuit court's conclusion that grounds for termination of his parental rights existed under §§ 211.447.5(2), .5(3), and .5(6).
I.
We first address the circuit court's finding that termination of parental rights was warranted based on Father's abuse or neglect of the children under § 211.447.5(2). Section 211.447.5 provides in relevant part:
The juvenile officer or the division may file a petition to terminate the parental rights of the child's parent when it appears that one or more of the following grounds for termination exist:
....
(2) The child has been abused or neglected. In determining whether to terminate parental rights pursuant to this subdivision, the court shall consider and make findings on the following conditions or acts of the parent:
(a) A mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody and control;
(b) Chemical dependency which prevents the parent from consistently providing the necessary care, custody and control of the child and which cannot be treated so as to enable the parent to consistently provide such care, custody and control;
(c) A severe act or recurrent acts of physical, emotional or sexual abuse toward the child or any child in the family by the parent, including an act of incest, or by another under circumstances that indicate that the parent knew or should have known that such acts were being committed toward the child or any child in the family; or
(d) Repeated or continuous failure by the parent, although physically or financially able, to provide the child with adequate food, clothing, shelter, or education as defined by law, or other care and control necessary for the child's physical, mental, or emotional health and development.
In this case, the circuit court expressly found that the Juvenile Officer had not proven the existence of three of the four factors listed in § 211.447.5(2). Thus, the judgment finds: no evidence that Father *97 had a chemical dependency (§ 211.447.5(2)(b)); no evidence that Father had "committed severe or recurrent acts of physical, emotional or sexual abuse toward ... the children" (§ 211.447.5(2)(c)); and no evidence that Father had failed to provide "adequate food, clothing, shelter, education, or other care necessary for the child's physical, mental or emotional health and development" (§ 211.447.5(2)(d)). Under § 211.447.5(2)(a), however, the circuit court did find that Father suffers from a mental condition which makes him unable to provide the children with appropriate care. This finding was based on the diagnosis by the licensed psychologist retained by the Children's Division, William McDonnell, that Father suffered from "Personality Disorder NOS, possibly antisocial or narcissistic."
Even though four factors are listed in § 211.447.5(2), the existence of any one of those factors is a sufficient basis for termination of parental rights.
Subparagraphs (a) through (d) under section 211.447.5(2) are simply categories of evidence to be considered along with other relevant evidence, rather than separate grounds for termination in and of themselves. Nevertheless, proof of one such factor is sufficient to support termination on the statutory abuse or neglect ground.
In Interest of M.A.M. , 500 S.W.3d 347, 358 (Mo. App. S.D. 2016) (citations and internal quotation marks omitted).
In order to find that a mental condition justifies termination of parental rights,
the court must analyze three aspects: "(1) documentation-whether the condition is supported by competent evidence; (2) duration-whether the condition is permanent or such that there is no reasonable likelihood that it can be reversed; and (3) severity of effect-whether the condition is so severe as to render the parent unable to knowingly provide the child necessary care, custody and control."
In re K.M. , 249 S.W.3d 265, 271-72 (Mo. App. W.D. 2008) (quoting In re K.A.W. , 133 S.W.3d 1, 13 (Mo. banc 2004) ).[4]
Father makes several challenges to the circuit court's finding that he had a mental condition which justified termination of his parental rights. Thus, Father argues that McDonnell's diagnosis of Father with "Personality Disorder NOS" ("Not Otherwise Specified") is incompetent, because McDonnell relied on an outdated version of the American Psychiatric Association's DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (the "DSM"). According to Father, the current edition of the DSM (DSM-V) has abandoned the diagnosis of "personality disorder NOS" since 2013. Father also argues that McDonnell's diagnosis of Father cannot support termination of his parental rights, because McDonnell evaluated Father in June 2015, eighteen months before trial, and the diagnosis was too far removed from the time of trial to support termination. See , e.g. , K.M. , 249 S.W.3d at 271-72.
We find it unnecessary to address Father's complaints about the competence, or recency, of McDonnell's diagnosis, however, because that diagnosis cannot support termination for a separate reason: the record lacks sufficient evidence that any mental condition from which Father suffers interferes with his ability to provide *98 minimally adequate parental care to his children.
"[S]tatutes authorizing termination on account of mental illness are not intended to punish parents for conditions they cannot avoid but seek only to protect the child." In re S.P.W. , 707 S.W.2d 814, 826 (Mo. App. W.D. 1986) (citing In re C.P.B. , 641 S.W.2d 456, 460-61 (Mo. App. E.D. 1982) ). Thus, "a diagnosis of mental illness does not per se render a parent unfit or justify, by itself, a judicial determination of neglect or abuse." In re A.M.F. , 140 S.W.3d 201, 207 (Mo. App. S.D. 2004) (citation omitted). Section 211.447.5(2)(a) itself explicitly provides that, in order for a mental condition to support termination, it must "render[ ] the parent unable to knowingly provide the child the necessary care, custody and control." This provision must be read in conjunction with § 211.447.10, which declares that "[t]he disability or disease of a parent shall not constitute a basis ... for the termination of parental rights without a specific showing that there is a causal relation between the disability or disease and harm to the child."
As the Eastern District explained in a case which found that a parent's diagnosis of schizophrenia did not by itself justify termination:
Unlike neglect, abandonment, abuse, or nonsupport, the mental illness of a parent is not per se harmful to a child. Termination of parental rights should not be granted on account of mental illness unless it is shown by clear, cogent and convincing evidence that [the child] is harmed or is likely to be harmed in the future. The focus should be on the ability of mother to care for [the child] and her ability to maintain a parental relationship with [the child] which would not be harmful to her.
In re D.L.M. , 31 S.W.3d 64, 69-70 (Mo. App. E.D. 2000) (citations and internal quotation marks omitted).
We only recently re-emphasized that, before a parent's mental illness can support termination, it must be proven that the condition disables the parent from providing his or her children with adequate care:
[W]hen termination is based on a parent's mental illness, courts must take great care to identify a causal connection between the disability and harm to a child before terminating parental rights. [¶] A mere finding of even severe mental illness is insufficient to support termination. A termination of parental rights on grounds of mental illness requires substantial evidence that the incapacity is so severe that it renders the parent incapable of providing minimally acceptable care.
In re A.G.B. , 530 S.W.3d 7, 31 (Mo. App. W.D. 2017) (quoting In re T.J.P., Jr. , 432 S.W.3d 192, 202-203 (Mo. App. W.D. 2014)[5] ).
Other than repeating the language of § 211.447.5(2)(a), the judgment in this case is completely silent as to what effect-if any-Father's mental condition has on his ability to parent his children. And at oral argument, counsel for the Juvenile Officer admitted that the mental condition diagnosed by McDonnell did not "have anything to do with appellant's ... ability to be able to parent his children or provide minimally acceptable care."
Counsel's concession is consistent with the evidence. McDonnell's report and testimony provide no basis to conclude that any *99 personality disorder from which Father suffers interferes with his ability to provide his children with minimally adequate care. In his report, McDonnell stated that
Review of [Father's] responses [to the Adult-Adolescent Parenting Inventory] suggests that he is very aware of the developmental levels that children go through. He will adjust and adapt to the needs of his children as they enter different developmental levels. [Father]'s responses suggest that he can be supportive of his children's emotional and behavioral needs. He does not rely on physical punishment. He can identify appropriate roles for children and adults in families. His responses suggest that he will meet his adult needs through relationships with other adults. [Father] may be a stricter parent than other adults. He may tend to view disagreements with his kids as disrespectful.
The summary of McDonnell's findings in his report states:
[Father] is aware of child developmental levels and how they change over time. He is aware of disciplinary strategies and his responses suggest that he avoids the use of physical punishment. He voices support for the children's emotional and behavioral growth and development. He may be a relatively strict parent but he is focused on helping [the] children learn in the safest and best way possible.
The only possible risk to the children identified in the report was based on McDonnell's concern that, during his evaluation, Father was "consciously avoiding any admission of problem areas." Because McDonnell did not believe that Father had been fully forthcoming, he hypothesized that any undiscovered mental health issues could present risks to the children:
The primary assessment of risk towards the children would be on the possibility of unknown problems that would be left untreated. If [Father] has emotional or psychiatric problem that he is unwilling to openly identify, they will continue to be problems and have the potential to increase the future risks for his children.
McDonnell's testimony at trial was consistent with his report. He acknowledged that Father "knows how to take care of kids," and reaffirmed the statements in his report concerning Father's parenting knowledge and parenting practices. McDonnell explained that he did not have sufficient information to definitively categorize Father's personality disorder as either antisocial or narcissistic. He testified that, although narcissistic traits could "interfere with the effectiveness of parenting," he acknowledged that "people do raise children regardless." He also testified that "excessive blaming, lack of accountability and those sorts of things," which are associated with a personality disorder, "can interfere with one's ability to effectively parent." McDonnell also testified that Father's questionnaire responses were "consistent with someone that could get angry."
McDonnell's report and testimony are insufficient to support a finding that any mental condition Father has would prevent him from providing his children with minimally adequate care. McDonnell himself acknowledged that Father has a substantial level of parenting knowledge, and applies reasonable parenting practices, even if he has a tendency to be strict. While McDonnell may have identified certain aspects of Father's personality which might diminish his effectiveness as a parent, "[t]he law does not require parents to be perfect or be model parents. Poor conduct or character flaws are not relevant unless they could actually result in future harm to the child." In re S.M.H. , 160 S.W.3d 355, 372 (Mo. banc 2005) (citation *100 omitted). The fact that Father may not be completely effective as a parent does not establish an inability to provide the "minimally adequate care" required to avoid termination of parental rights. Similarly, the fact that Father has the type of personality where he "could get angry" cannot support termination, since that description likely applies to a large majority of adults. Finally, McDonnell's concerns that Father might have additional, unknown mental health conditions, and that those undiscovered conditions might present risks to the children, does nothing to satisfy the Juvenile Officer's burden to prove-by by clear, cogent and convincing evidence-that Father actually has a mental condition which actually prevents him from serving as a parent.
The insufficiency of the evidence that Father has a disabling mental condition is highlighted by the judgment's own findings: that there was no evidence that Father suffers from a chemical dependency; no evidence "that the Father committed severe or recurrent acts of physical, emotional or sexual abuse" toward any of the children; no evidence that Father failed "to provide the child[ren] with adequate food, clothing, shelter, education or other care necessary for the child[ren]'s physical, mental or emotional health and development"; that the children have emotional ties to Father; that "Father has maintained regular supervised visits with the child[ren]"; that he "has provided some financial or other support for the cost of the care and maintenance of the child[ren] since [they] came into care"; and that there was no evidence "of deliberate acts by any parent which the parents knew or should have known [would] subject[ ] the child[ren] to a substantial risk of physical or mental harm."[6]
The judgment's finding that Father "suffers from a mental condition that is either permanent or such that there is no reasonable likelihood ... [it] can be reversed and which renders Father unable to knowingly provide the child with the necessary care, custody and control" is not supported by substantial evidence. Because the existence of a disabling mental condition was the sole basis on which the circuit court found that termination was justified on the basis of abuse or neglect under § 211.447.5(2), we reverse the circuit court's conclusion that Father's parental rights could be terminated under § 211.447.5(2).
II.
The circuit court's conclusion that termination was justified under § 211.447.5(3), based on Father's purported failure to rectify the conditions which brought the children under the court's jurisdiction, must *101 be reversed for the same reasons discussed in § I, above.
Section 211.447.5 provides:
The juvenile officer or the division may file a petition to terminate the parental rights of the child's parent when it appears that one or more of the following grounds for termination exist:
...
(3) The child has been under the jurisdiction of the juvenile court for a period of one year, and the court finds that the conditions which led to the assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to exist, that there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future, or the continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home. In determining whether to terminate parental rights under this subdivision, the court shall consider and make findings on the following:
(a) The terms of a social service plan entered into by the parent and the division and the extent to which the parties have made progress in complying with those terms;
(b) The success or failure of the efforts of the juvenile officer, the division or other agency to aid the parent on a continuing basis in adjusting his circumstances or conduct to provide a proper home for the child;
(c) A mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody and control;
(d) Chemical dependency which prevents the parent from consistently providing the necessary care, custody and control over the child and which cannot be treated so as to enable the parent to consistently provide such care, custody and control.
The judgment found that Father suffered from no chemical dependency under § 211.447.5(3)(d). In considering whether Father suffered from a disabling mental condition under § 211.447.5(3)(c), the judgment essentially repeats the findings made by the court in connection with its abuse or neglect finding. For the reasons explained in § I, above, the judgment's findings with respect to Father's purported mental condition are insufficient to justify termination of his parental rights.
Besides finding that Father suffered from a mental condition which prevented him from parenting, the judgment also finds, under § 211.447.5(3)(a), that he "has failed to make progress in complying with the terms of the social service plan entered into with the Children's Division," and finds under § 211.447.5(3)(b) that Father remains unable to provide the children with a proper home despite the services offered by the Children's Division. To support these findings, the judgment refers to a variety of circumstances, including Father's repeated emotional outbursts during visits with the children, during interactions with caseworkers, and even during court hearings; and the inadequacy of the domestic violence, anger management, and parenting programs in which Father participated. The circuit court's findings under §§ 211.447.5(3)(a) and (b) also emphasize, however, Father's failure to adequately address the personality disorder diagnosed by McDonnell. If the existence of that mental condition cannot itself support termination of Father's parental rights, Father's purported failure to adequately *102 address that mental condition cannot justify termination, either.
The circuit court's finding that Father suffered from a mental condition which prevented him from adequately parenting, and that he had failed to adequately address that mental condition, underlies the court's conclusion that termination was justified under § 211.447.5(3) for failure to rectify the conditions which initially brought the children within the court's jurisdiction. For the reasons stated in § I, above, we reverse the circuit court's determination that termination of Father's parental rights was justified under § 211.447.5(3).
III.
The circuit court's judgment also finds that Father is unfit to be a party to the parent and child relationship, and that termination is accordingly justified under § 211.447.5(6). In making this determination, the court relied on its findings of fact in connection with the allegations of abuse or neglect and failure to rectify. For the reasons explained in §§ I and II, above, the abuse or neglect and failure to rectify findings are insufficient to support termination of Father's parental rights. Termination is likewise unjustified under § 211.447.5(6).
Conclusion
The circuit court's judgment, which terminated Father's parental rights over his children A.F., J.C.F., and J.A.F., is reversed. We are mindful that the court took jurisdiction of the children almost three years ago, in April 2015; prompt movement toward permanency is in the best interest of the children.
All concur.

The petitions sought to terminate the parental rights not only of Father, but of the children's mother, J.D. Mother was served with the petitions by publication, but did not appear or answer. Her parental rights were terminated by the circuit court in November 2016. That ruling is not at issue in this appeal.

Statutory citations refer to the 2016 edition of the Revised Statutes of Missouri.

The judgment made an exception from this finding for "the allegations and/or findings set forth above regarding sexual abuse in 2012." The court's May 2017 judgment made no finding that sexual abuse in fact occurred in 2012, however. Instead, the judgment merely quoted the court's own February 2016 Findings and Recommendations, which explicitly stated that "[t]he Court is not making a determination of the credibility of the ... finding [in a 2012 Children's Division report] as it relates to the allegations of sexual abuse."

K.M. was overruled on other grounds by In re M.N. , 277 S.W.3d 843, 845 (Mo. App. W.D. 2009).

T.J.P. was overruled on other grounds by S.S.S. v. C.V.S. , 529 S.W.3d 811, 816 n.3 (Mo. banc 2017).

In addition to discussing the four factors listed in § 211.447.5(2), the circuit court's judgment also justifies its abuse or neglect finding by referring to Father's stipulation in June 2015 to the allegations of the Juvenile Officer's First Amended Petition. Father's stipulation acknowledged that he had neglected the children and their mental health needs and that, as of June 2015, "[t]he children [we]re at risk of further harm or neglect absent the intervention of th[e] Court." Father's stipulation that he had neglected the children prior to June 2015 cannot, standing alone, support termination of his parental rights, however. "Facts that supported the trial court's initial assumption of jurisdiction over the Children are certainly relevant to the propriety of a subsequent termination, but such evidence must be updated to reflect the conditions existing at the time of the termination trial in order to support the difficult, but necessary, assessment of the potential of future harm." In re M.A.M. , 500 S.W.3d 347, 357 (Mo. App. S.D. 2016) (citing In re K.A.W. , 133 S.W.3d 1, 10 (Mo. banc 2004) ); accord , In re A.M.W. , 448 S.W.3d 307, 313 (Mo. App. E.D. 2014) ; In re P.J. , 403 S.W.3d 672, 675 (Mo. App. S.D. 2012).