**In the Interest of: T.R.W., Minor.**

**T.D.W., Natural Father, Appellant,**

v.

**Greene County Juvenile Office, Respondent.**

**No. SD 30220.**

Missouri Court of Appeals, Southern District, Division One.

June 16, 2010.

Rehearing Denied July 8, 2010.

Application for Transfer Denied Aug. 31, 2010.

John E. Kelly, Springfield, MO, for Appellant.

Bill Prince, Springfield, MO, for Respondent.

DON E. BURRELL, Judge.

T.D.W. ("Father"), the biological father of the minor child T.R.W. ("Child"), ap-

peals the judgment that terminated his parental rights to and over Child.[1] Father asserts two points of alleged error: 1) that the trial court's findings that Father had both abandoned Child and failed to rectify the conditions that initially caused Child to come under the protection of the court were not supported by substantial evidence and were against the weight of the evidence; and 2) that the trial court abused its discretion in finding that the termination of Father's parental rights was in Child's best interests. We affirm the judgment.

### Factual and Procedural Background[2]

When reviewing a judgment to terminate parental rights, we "consider the facts and the reasonable inferences derived therefrom in a light most favorable to the judgment." *In re L.N.D.*, 219 S.W.3d 820, 822 (Mo.App. S.D.2007) (citation omitted). This recitation of the relevant facts is made in accordance with that standard.

Child was taken into protective custody on November 30, 2007. Father was incarcerated in a federal penitentiary at the time. At some point after February of 2008, Jim Snare ("Snare"), a social worker with the Children's Division, was assigned to Child's case and sent Father a letter "instructing him that we have a court hearing."

In response to Snare's letter, Father sent Snare a request for—in Snare's words—"records that I have in order to, I guess, make a case to get his child." This

request for records by Father constituted the only communication Father would make with the Children's Division. Although Father would have been allowed to have contact with Child if he had requested it, Father wrote no letters to Child and made no other attempts to "provide any sort of parental relationship with [Child]." Father also did not provide Child with any financial or in-kind support after he learned that Child had been taken away from her mother and placed into protective custody.

Father was personally served with a copy of the juvenile officer's petition to terminate Father's parental rights on January 20, 2009. Over the final few months before the termination trial began, the juvenile officer sent Father three separate attorney applications which advised Father of his right to legal counsel. The juvenile officer received no response from Father. Trial was held on the petition to terminate parental rights on September 25, 2009. Father, who was still incarcerated, did not appear at that trial either in person or by counsel.

On October 21, 2009, the trial court entered its judgment terminating T.D.A.'s and Father's parental rights. Father now appeals that judgment. Additional facts relevant to the resolution of Father's appeal will be set forth as necessary in the context of our analysis of his specific allegations of error.

---

1. T.D.A., Child's natural mother—whose parental rights were also terminated by the judgment—is not a party to this appeal.

2. The record on appeal does not contain all of the evidence presented to the trial court. At the beginning of the trial, the juvenile officer asked the trial court to take judicial notice of the contents of two court files: Child's underlying abuse/neglect file and the case file started when the petition for termination was

filed. No objection was made to that request, and the court took judicial notice of the files. Neither of these files has been included by Father in the record on appeal. As a result, these "evidentiary omissions will be taken as favorable to the trial court's ruling and unfavorable to the appellant." *In re Carl Mc-Donald Revocable Trust Dated Oct. 1, 1979*, 942 S.W.2d 926, 932 (Mo.App. S.D.1997).

## Analysis

### Point I: Statutory Grounds for Termination

We review a trial court's decision that one or more statutory ground exists for terminating parental rights to determine "whether the ruling is supported by substantial evidence, is against the weight of the evidence, or involves an erroneous application or declaration of the law." *In re C.A.M.*, 282 S.W.3d 398, 404 (Mo.App. S.D. 2009); *In re S.M.H.*, 160 S.W.3d 355, 362 (Mo. banc 2005). We will reverse the trial court's decision only if we are left with a firm belief that the decision was wrong. *Id.* If we find that at least one statutory ground for termination was properly pleaded and proven, we will affirm the decision of the trial court. *In re C.A.M.*, 282 S.W.3d at 404–05 (citing *In re A.M.S.*, 272 S.W.3d 305, 308 (Mo.App. W.D.2008)). We view any conflicting evidence in the light most favorable to the judgment and defer to the trial court's assessment of witness credibility. *In re C.A.M.*, 282 S.W.3d at 405 (citing *In re A.S. W.*, 137 S.W.3d 448, 452–53 (Mo. banc 2004); *In re C.F.C.*, 156 S.W.3d 422, 426 (Mo.App. E.D. 2005)).

■■■ The court's judgment found that the juvenile officer had proven by clear and convincing evidence three statutory grounds for terminating Father's parental rights: abandonment (*see* section 211.447.5(1));[3] neglect (*see* section 211.447.5(2)); and what is commonly referred to as "failure to rectify" (*see* section 211.447.5(3)). As earlier noted, Father has challenged the trial court's findings in regard to only two of the three grounds: abandonment and failure to rectify.

When the trial court finds multiple statutory grounds for termination of parental rights, in order to affirm the judgment this Court need only find that one of the statutory bases was proven and that the termination was in the best interests of the child. *In re T.F.S.*, 52 S.W.3d 44, 48 (Mo.App. S.D.2001); *see also In re J.L.M.*, 64 S.W.3d 923, 925 (Mo.App. S.D.2002) ("[o]ne ground for termination adequately pleaded and proven is sufficient to support termination."). Thus, if an appellant fails to challenge each of the termination grounds found by the trial court, it is unnecessary for the appellate court to address the specific ground that is challenged. *In re B.J.K.*, 197 S.W.3d 237, 246 (Mo.App. W.D.2006). "However, because the termination of parental rights is one of the most serious acts a court is empowered to perform, *In re B.S.B.*, 76 S.W.3d 318, 324 (Mo.App. W.D.2002), we review the evidence *ex gratia* to determine whether the juvenile officer established at least one ground for termination by '[c]lear, cogent, and convincing evidence.'" *In re B.N.W.*, 115 S.W.3d 869, 871 (Mo.App. S.D.2003). *In re J.B.*, 214 S.W.3d 353, 355 (Mo.App. S.D.2007). Our *ex gratia* review of the trial court's abandonment finding shows that it is supported by substantial evidence.[4]

The relevant portion of the statute at issue provides that parental rights may be terminated if:

(1) The child has been abandoned. For purposes of this subdivision a **"child"** means any child over one year of age at

---

**3.** All references to section 211.447 are to RSMo, Cum.Supp.2009.

**4.** Although Father has also challenged the trial court's abandonment finding as against the weight of the evidence, Father has cited no evidence against which to weigh the evidence that supports the court's finding, and our own review has failed to reveal any.

the time of filing of the petition. The court shall find that the child has been abandoned if, for a period of six months or longer:

. . . .

(b) The parent has, without good cause, left the child without any provision for parental support and without making arrangements to visit or communicate with the child, although able to do so[.]

Section 211.447.5 (bolding in original).

The gravamen of Father's complaint is "that the testimony of the sole witness, case[–]carrying worker [Snare], was insufficient to establish the grounds for termination but rather such trial court finding relied on matters outside [Snare]'s personal knowledge including hearsay and documents lacking proper evidentiary foundation."

As previously indicated, Snare's testimony was not the only evidence before the trial court. It took judicial notice of two court files, the contents of which have not been provided to this court for its review. In addition, five documentary exhibits were received into evidence by the court without objection. Father has failed to identify which, if any, of these exhibits contained hearsay that was relied on by the trial court in reaching its judgment.

Snare was assigned Child's case in February of 2008. We presume that a copy of Snare's letter to Father would be in the underlying abuse/neglect file that the court took judicial notice of and that Father has failed to provide. Assuming the date of that letter would be favorable to the court's ruling,[5] we presume the letter was sent to Father shortly after Snare became responsible for Child's case. Snare testified that between the time he sent the letter to Father and the date of trial, Father made no attempt to contact Child

in any manner and provided Child with no financial support of any kind. Father complains that Snare's testimony was inconsistent and should not have been believed by the court. Those credibility determinations, however, are for the trial court to make, and we presume they were made in a manner consistent with the judgment. *In re C.A.M.*, 282 S.W.3d at 405.

▆▆▆ In regard to Father's failure to provide any financial support to Child, although Father was incarcerated during the entire period of time Child was in care,

. . . substantially reduced wages received by an incarcerated parent do not excuse his obligation under section 211.447 to make monetary contributions toward support of his child. *[In re] M.N.M.*, 906 S.W.2d [876] at 879 [ (Mo.App.S.D.1995) ]; *[In re] M.L.K.*, 804 S.W.2d [398] at 402 [ (Mo.App.W.D. 1991) ]. While such a contribution from an incarcerated parent will not significantly assist in providing the child with essentials, even a minimal contribution evinces a parent's intent to continue the parent/child relationship. *Id.* Evidence of this intent is lacking, however, where a parent fails to make any contribution, no matter how diminutive the amount. *Id.*

*In re R.K.*, 982 S.W.2d 803, 807 (Mo.App. W.D.1998).

Inferences favorable to the court's judgment that may be drawn from the fact that Father responded to Snare's letter with a request for records are: 1) Father received Snare's letter; 2) Father knew that Child was in the custody of the court; and 3) Father knew that Snare was a person with knowledge about Child's situation. Despite this knowledge, Father failed to

5. *See* n2, *supra.*

provide Child with any parental communication or support for a period of time approximately three times longer than the required statutory minimum of six months. Father evinced no intent to preserve the parent-child relationship, and his lack of contact constituted an abandonment of Child. Point I is denied.

*Point II: Best Interests Finding*

■ In reviewing a claim that termination was not in the child's best interest, we examine the record for an abuse of discretion. *In re C.A.M.*, 282 S.W.3d at 405 (citing *In re I.Q.S.*, 200 S.W.3d 599, 603 (Mo.App. W.D.2006)). As in our review of the evidence supporting the statutory grounds for termination, we view any conflicting evidence in the light most favorable to the judgment and defer to the trial court's assessment of witness credibility. *In re C.A.M.*, 282 S.W.3d at 404–05 (citing *In re A.S.W.*, 137 S.W.3d 448, 452–53 (Mo. banc 2004); *In re C.F.C.*, 156 S.W.3d 422, 426 (Mo.App. E.D.2005)).

Child was born in December of 2002 and was taken into the protective custody of the court a few days before her fifth birthday. Father was incarcerated in a federal prison at the time Child was taken from her mother and remained incarcerated at the time of trial. Child has no emotional ties or bonds with either of her parents and does not ask about them. Child is currently residing with her paternal grandfather, is in good health, and is doing well in school. Child's grandfather is meeting all of her needs and is willing to provide her with a stable, permanent home through either guardianship or adoption.

It would perhaps be the ultimate irony if, as seemingly argued by Father, the legal relationship of parent and child could not be terminated and the child forced to remain in legal limbo by an incarcerated parent's knowing refusal to maintain even

a scintilla of an actual relationship with his child. The trial court did not abuse its discretion in finding that the termination of Father's parental rights was in Child's best interests.

Point II is also denied, and the judgment of the trial court is affirmed.

BARNEY, J., and BATES, P.J., Concur.