

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| IN THE INTEREST OF: D.L.S. III AND D.L.S.; | ) ) | |
| | ) | **WD83518** |
| JUVENILE OFFICER, | ) | |
| | ) | **OPINION FILED: July 28, 2020** |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| D.L.S. II, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable J. Dale Youngs, Judge

Before Division Four:  Cynthia L. Martin, Chief Judge, Presiding, Alok Ahuja, Judge and
W. Douglas Thomson, Judge

D.L.S. II ("Father") appeals from the trial court's judgment terminating his parental

rights to D.L.S. III and D.L.S. (collectively "the Children").  Father argues on appeal that

the trial court's judgment constituted error in that: (1) the judgment considered Father's

emotional bond with the Children when determining whether statutory grounds existed for

termination of his parental rights; and (2) the judgment found that Father was unfit to be a

party to the parent-child relationship without finding a convincing link between past behavior and predicted future behavior. We affirm.

## Factual and Procedural History[1]

Father is the biological father to D.L.S. III and D.L.S., male twins born on May 13, 2012, and N.K.S. ("Mother") is their biological mother. The Children have not seen Father since approximately 2015. Father moved to Houston, Texas to be with his family at some point prior to 2017. While in Texas in 2017, Father suffered at least one stroke that caused him to have severe medical problems and limitations so that, despite making improvements, Father continued to reside in a rehabilitation facility in October 2019.

In October 2017, Mother gave birth to another son. Both Mother and the newborn son tested positive for methamphetamine at birth. On October 12, 2017, the Juvenile Officer of Jackson County, Missouri ("Juvenile Officer") instituted abuse and neglect proceedings, filing petitions that alleged the Children were without proper care, custody, and support necessary for their well-being in that Mother neglected the Children while abusing methamphetamine; lacked appropriate housing for herself and for the Children; exposed the Children to her live-in paramour, a registered sex offender; and exposed the Children to domestic violence between Mother and her live-in paramour. The trial court issued orders for temporary protective custody on October 12, 2017, placing the Children in the temporary legal custody of the Missouri Children's Division ("Children's Division") with appropriate placement. Following an adjudication hearing in December 2017, the trial

---

[1]When reviewing a judgment terminating parental rights, we view the facts in the light most favorable to the judgment. *In Interest of A.R.B.*, 586 S.W.3d 846, 851 n.2 (Mo. App. W.D. 2019).

court sustained the Juvenile Officer's first amended petition, finding that the Children were in need of care and assuming jurisdiction over the Children. In January 2017, the trial court entered an order of disposition that indicated Father "resides out of state in Texas: he is disabled and resides in a care facility" and indicated that Father "is not requesting custody." While the trial court ordered that Mother receive services provided by the Children's Division, no services were offered to Father other than the trial court's mandate that contact between Father and the Children be supervised as deemed appropriate by the Children's Division.

On October 21, 2018, the trial court issued an order adopting a family court commissioner's findings and recommendation that concluded the Children had been in alternative care for more than twelve consecutive months and that it was not reasonably likely that reunification may be accomplished within the foreseeable future. Thus, the trial court altered the permanency goal from reunification to termination of parental rights and adoption.

The Juvenile Officer instituted a proceeding for terminating Father's parental rights as to the Children on December 19, 2018 ("Petitions").[2] The Petitions alleged that the following statutory grounds existed to terminate Father's parental rights to the Children: (1) Father had abandoned the Children for a period of six months or more under section 211.447.5(1)[3]; (2) the Children had been abused or neglected pursuant to section

---

[2]The Petitions also sought to terminate Mother's parental rights and the parental rights of any unknown John Doe claiming parental rights as to the Children.
[3]All statutory references are to RSMo 2016 as supplemented through December 19, 2018, unless otherwise indicated.

211.447.5(2); (3) the Children had been under the jurisdiction of the trial court for a period of at least a year and the conditions which led to the assumption of jurisdiction continue to exist with little likelihood that those conditions would be remedied so that the Children could be returned to Father in the foreseeable future pursuant to section 211.447.5(3); and (4) Father is unfit to be a party to the parent-child relationship pursuant to section 211.447.5(5)(a). The Petitions further asserted that it would be in the best interests of the Children to terminate Father's parental rights.

In May 2019, the trial court held a permanency review hearing in the abuse and neglect proceedings. During that hearing, Father orally requested that the permanency goal change from termination of parental rights and adoption to placement with a willing and fit relative pending Father's rehabilitation; that the trial court find that the Children's Division failed to make reasonable efforts in support of reunification with Father; and that the trial court find the Children's Division failed to make reasonable efforts to locate a paternal kinship or relative placement for the Children. Following testimony and other evidence, the trial court rejected all of Father's requests. In its findings, the trial court concluded that no evidence warranted changing the permanency goal to placement with a fit and willing relative pending Father's rehabilitation because, in the eighteen months the Children had been in the Children Division's custody, Father had not had contact with the Children despite the ability to do so via phone or video calls or via letters or cards. The trial court further found that there was no evidence adduced as to a parent-child relationship between Father and the Children, including a relationship prior to the Children's placement in protective custody.

4

A trial on was held on October 15, 2019, in the termination of parental rights proceedings to determine whether there were statutory grounds to terminate Father's parental rights and to determine whether termination of his parental rights would be in the Children's best interests. The Juvenile Officer submitted twenty-seven exhibits, and requested that the trial court take judicial notice of the trial court's records in the underlying abuse and neglect proceedings and in criminal proceedings involving Father. Father did not object to either the admission of the exhibits or to the requests for judicial notice.

The trial court also heard testimony from two Children's Division supervisors who worked on the Children's cases, and from Father. A Children's Division supervisor testified that Father did not have any in-person visitation with the Children during their placement in protective custody but acknowledged that the Children had phone contact with Father during calls with members of their paternal family. The Children's Division supervisors each testified that they had no knowledge of any financial support provided by Father while the Children were in protective custody. Father testified that he continued to live in a rehabilitation facility and that he was unable to care for himself fully. Father admitted that he did not know how long he would be in the rehabilitation facility but indicated that his condition had been improving. At the conclusion of the trial, Father's counsel indicated to the trial court that Father was not contesting the grounds for termination but instead was arguing that termination of his parental rights would not be in the Children's best interests. The trial court took the matter under advisement.

The trial court issued a judgment terminating Father's parental rights ("Judgment") on December 2, 2019.[4] While the Judgment concluded that the Juvenile Officer failed to meet its burden to prove by clear and convincing evidence that Father had abandoned the Children pursuant to section 211.447.5(1), the Judgment concluded that the Juvenile Officer met its burden to prove by clear, cogent, and convincing evidence three other statutory bases for terminating Father's parental rights: (1) that the Children had been abused or neglected pursuant to section 211.447.5(2); (2) that the Children had been under the jurisdiction of the trial court for more than one year, that the conditions that led the assumption of jurisdiction still persisted, and that those conditions still existed with little likelihood that they would be remedied soon so that the Children could be returned to Father pursuant to section 211.447.5(3); and (3) that Father is unfit to be a party to the parent-child relationship pursuant to section 211.447.5(5)(a). The Judgment further concluded that terminating Father's parental rights was in the best interests of the Children.

Father appeals. Additional facts are discussed in the analysis portion of this Opinion as necessary.

**Standard of Review**

"Termination of parental rights is an exercise of awesome power, and therefore we review such cases closely." *In Interest of A.R.B.*, 586 S.W.3d 846, 856 (Mo. App. W.D. 2019) (quoting *In Interest of G.M.G.*, 525 S.W.3d 162, 164-65 (Mo. App. W.D. 2017)). Termination of parental rights is appropriate when a statutory ground for termination is

---

[4]The Judgment also terminated Mother's parental rights, and after recognizing that no person came forward as a John Doe, terminated parental rights asserted by any John Doe.

6

supported by clear, cogent, and convincing evidence and when evidence establishes that termination of parental rights is in the best interest of the child by a preponderance of the evidence. *In Interest of J.A.F.*, 570 S.W.3d 77, 82 (Mo. App. W.D. 2019). When, as here, the trial court has found more than one statutory basis for terminating parental rights, we need only find that one of the statutory bases for termination was supported by clear, cogent, and convincing evidence and that termination was in the best interests of the child to affirm the trial court's judgment. *Id.* at 83. Father's appeal only concerns whether a statutory basis existed for terminating his parental rights.

Our review of whether a statutory ground existed for terminating parental rights is guided by the standard of review for court-tried cases set forth in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). *In Interest of J.P.B.*, 509 S.W.3d 84, 90 (Mo. banc 2017). We will affirm the trial court's judgment "unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *In Interest of A.R.B.*, 586 S.W.3d at 856 (quoting *In Interest of G.M.G.*, 525 S.W.3d at 164). When reviewing the evidence, we are "mindful 'that [trial] courts are better positioned to determine witness credibility and weigh evidence in the context of the whole record than an appellate court.'" *In Interest of J.P.B.*, 509 S.W.3d at 90 (quoting *J.A.R. v. D.G.R.*, 426 S.W.3d 624, 626 (Mo. banc 2014)). As such, we view the evidence in the light most favorable to the trial court's judgment, disregarding all contrary evidence and inferences. *Id.*

## Analysis

Father presents two points on appeal, both of which challenge the Judgment's conclusions that statutory bases exist for terminating Father's parental rights. In his first point on appeal (which applies to two of the three statutory grounds for terminating Father's parental rights), Father argues that the trial court erred in considering Father's emotional bond with the Children in determining whether statutory grounds existed for terminating Father's parental rights because evidence regarding the parent-child emotional bond is only relevant to the best interests evaluation. Father's second point on appeal (which addresses the third statutory ground for terminating Father's parental rights) argues that, in concluding that Father was an unfit party to the parent-child relationship, the trial court's Judgment failed to find a convincing link between Father's past behavior and future predicted behavior. Father's first point on appeal is dispositive.

Father's first point on appeal takes issue with the trial court's findings supporting its conclusion that sections 211.447.5(2) and (3) provided statutory bases for terminating Father's parental rights. The Judgment concluded that the Children had been abused or neglected pursuant to section 211.447.5(2), and then made the following findings, as required by section 211.447.5(2)(d):

> Competent evidence showed that [Father] has repeatedly and continuously failed, although physically and financially able to do so, to provide the [C]hildren with adequate food, clothing, shelter, education, and other care necessary for their physical, mental or emotional health and development. Specifically, [Father] has not seen the [C]hildren in at least the past six months, nor has he provided financial support for their needs in food, clothing, shelter or education. He acknowledges that he is unable to reunify with the [C]hildren in the near future, and that he does not have the resources necessary at this time to be a reunification resource for the [C]hildren. There

8

is little bond between he and the [C]hildren.  Given the length of time the [C]hildren have been in alternative care and services have been available, and [Father's] lack of ability to parent the [C]hildren, these circumstances are not going to change in the reasonably foreseeable future.

With respect to section 211.447.5(3), the Judgment concluded that the Children had been under the jurisdiction of the trial court for over a year and that the conditions that led to the assumption of jurisdiction continue to persist.  The Judgment then made the following findings required under section 211.557.5(3)(a) and (b):

a. Competent evidence showed that [Father] has failed to make progress in complying with the terms of social service plans entered into with the Children's Division.  Specifically, [Father] has not seen the [C]hildren in at least the past six months, nor has he provided financial support for their needs in food, clothing, shelter or education.  He acknowledges that he is unable to reunify with the [C]hildren in the near future, and that he does not have the resources necessary at this time to be a reunification resource for the [C]hildren.  There is little bond between he and the [C]hildren.  Given the length of time the [C]hildren have been in alternative care and services have been available, and [Father's] lack of ability to parent the [C]hildren, these circumstances are not going to change in the reasonably foreseeable future.

b. Competent evidence showed that [Father] has failed to adjust his circumstances and conduct on a continuing basis so that he can provide a proper home for the [C]hildren.  Specifically, [Father] has not seen the [C]hildren in at least the past six months, nor has he provided financial support for their needs in food, clothing, shelter or education.  He acknowledges that he is unable to reunify with the [C]hildren in the near future, and that he does not have the resources necessary at this time to be a reunification resource for the [C]hildren.  There is little bond between he and the [C]hildren.  Given the length of time the [C]hildren have been in alternative care and services have been available, and [Father's] lack of ability to parent the [C]hildren, these circumstances are not going to change in the reasonably foreseeable future.

Father's first point relied on argues that the trial court inappropriately considered Father's emotional bond with the Children in the analysis of whether a statutory basis for termination existed under sections 211.447.5(2) and (3) in violation of *In re C.A.L.*, 228

9

S.W.3d 77, 85 (Mo. App. S.D. 2007), so that the Judgment's determination that those statutory bases for termination existed was "fundamentally prejudiced." [Appellant's Brief, p. 5]

Father's first point relied on does ***not*** challenge whether substantial evidence supported the trial court's Judgment that sections 211.447.5(2) and (3) afforded statutory bases to terminate Father's parental rights. Further, the first point relied on does not assert that, had the trial court not included findings about Father's bond with the Children, there would be no evidence to support these statutory bases for termination of his parental rights. Instead, Father's point on appeal complains only that the trial court's findings that Father's parental rights should be terminated pursuant to sections 211.447.5(2) and (3) erroneously relied on Father's bond to the Children.

This claimed error necessarily arose, for the first time, upon issuance of the Judgment. Yet, there is nothing in the record to indicate that Father ever advised the trial court of its alleged error. "Appellate courts are merely courts of review for trial errors, and there can be no review of a matter which has not been presented to or expressly decided by the trial court." *In Interest of I.K.H.*, 566 S.W.3d 629, 632 (Mo. App. S.D. 2018) (quoting *In re Adoption of C.M.B.R.*, 332 S.W.3d 793, 814 (Mo. banc 2011), *abrogated on unrelated grounds by S.S.S. v. C.V.S.*, 529 S.W.3d 811 (Mo. banc 2017)). "Rule 78.09 requires a party, 'at the time the ruling or order of the court is made or sought, [to make] known to the court the action that the party desires the court to take or objections to the action of the court and grounds therefore.'" *Brown v. Brown*, 423 S.W.3d 784, 787 (Mo. banc 2014). "Failure to do so precludes a party from obtaining appellate review of error in the trial

10

court's ruling or order," as "'a party should not be entitled on appeal to claim error on the part of the trial court when the party did not call attention to the error at trial and did not give the court the opportunity to rule on the question.'" *Id.* (quoting *Niederkorn v. Niederkorn*, 616 S.W.2d 529, 535-36 (Mo. App. E.D. 1981)). "This prerequisite is intended to avoid error by granting the trial court an opportunity to intelligently rule on the question while avoiding the expense, delay, and hardship of an appeal and retrial." *In Interest of I.K.H.*, 566 S.W.3d at 632.

The trial court had no such opportunity in this case. After the trial court issued its Judgment concluding that there were three statutory bases to terminate Father's parental rights, Father took no action to inform the trial court of its alleged error in referring to Father's bond with the Children in the Judgment's discussion about whether sections 211.447.5(2) and (3) afforded statutory bases to terminate Father's parental rights. While Father's argument does not relate to the "form or language" of the Judgment, and thus no post-judgment motion may have been required by Rule 78.07(c),[5] Father was nevertheless required to raise his objection in in the trial court under Rule 78.07(b), which provides that "in cases tried without a jury . . . , neither a motion for a new trial nor a motion to amend the judgment or opinion is necessary to preserve any matter for appellate review *if the matter was previously presented to the trial court*." (Emphasis added.) Father chose not to present the error set forth in his first point relied on to the trial court in a post-trial motion, and in making that choice, he waived the opportunity to present the error on appeal. *See*

---

[5]Rule 78.07(c) requires a party to bring issues involving the form of a judgment (including the absence of required findings) to a trial court's attention as a condition of preserving a claim of error regarding those issues. All rule references are to the Missouri Supreme Court Rules (2019), unless otherwise indicated.

*Interest of I.K.H.*, 566 S.W.3d at 632 (concluding that a parent waived argued due process violation where judgment terminated parental rights on a statutory basis not pleaded in the petition when that parent did not file a post-trial motion bringing that issue to the trial court's attention).

Moreover, Father's failure to advise the trial court of its alleged error is compounded by the fact that at the conclusion of the evidence at trial, Father expressly advised the trial court, through his attorney, that he was not contesting the statutory grounds for termination of his parental rights, and was only contesting whether termination of Father's parental rights would be in the Children's best interests. On appeal, Father has not challenged the trial court's best interest findings, and only challenges whether statutory grounds for termination of his parental rights existed. We do not (and need not) find that Father is estopped to raise claims of error on appeal that are in direct opposition to the representation made by his attorney at the close of the evidence at trial. However, that representation, coupled with father's failure to advise the trial court after the Judgment was entered of the alleged erroneous reliance on Father's parental bond, underscores that Father's first point on appeal is not preserved for our review.

Even were we to conclude that Father's first point on appeal was preserved for our review (which we do not), we would not be persuaded that there is merit to Father's contention. Father argues that it is error as a matter of law to rely at all on the parent-child bond in determining whether there is a statutory basis to terminate parental rights. He relies on *In re C.A.L.*, where the Southern District concluded that there was not substantial evidence to support the trial court's determination that a parent neglected the child or that

12

the conditions which led to the assumption to jurisdiction still existed.  228 S.W.3d at 82.

The Southern District observed:

> The [trial] court attempted to bolster its grounds for termination with bonding assessments conducted between [the parent] and [the child].  The bonding assessments, which were completed more than two years prior to the termination judgment, indicated that [the child] had become considerably attached to his foster family.  This finding is only appropriate if we reach the best interests analysis.  A trial court may reach the best interests analysis only after it has made a determination that one of the statutory grounds for termination exists.

*Id.* at 85.  *C.A.L.* did not hold, as Father suggests, that it is error as a matter of law to refer to a parent's bond to the child when discussing whether a statutory basis for termination has been established.  *C.A.L.* merely held that reliance on a child's bond with the parent cannot independently supply substantial evidence to support a statutory basis for terminating parental rights.

Here, the trial court's conclusion that Father's parental rights should be terminated pursuant to section 211.447.5(2) is supported by substantial evidence independent of the trial court's reference to Father's bond with the Children.  Father's contention to the contrary is without merit.[6]  Substantial evidence established that the Children had been neglected

---

[6]The argument section of Father's brief alleges that no substantial evidence supports the trial court's finding that Father's parental rights should be terminated pursuant to sections 211.447.5(2) and (3) independent of the court's reference to the lack of a parental bond.  The argument portion of Father's brief also asserts that the Judgment's focus on his relationship with the Children was inappropriate because the status of their relationship is a natural consequence of Father's disability.  These arguments are not encompassed within Father's first point relied on, and are not preserved for our review.  *See Eckel v. Eckel*, 540 S.W.3d 476, 483 n.17 (Mo. App. W.D. 2018) ("[A] reviewing court is obliged to determine only those questions stated in the points relied on.  Issues only in the argument portion of the brief are not presented for review." (quoting *Lusher v. Gerald Harris Constr., Inc.*, 993 S.W.2d 537, 544 (Mo. App. W.D. 1999)).  We nonetheless address the substantial evidence which supports the trial court's finding that a statutory basis exists to terminate Father's parental rights pursuant to section 211.447.5(2), given the importance of the rights at stake in this case.

13

and, specifically, that Father failed to fulfill his parental obligation to support, communicate with, and visit the Children despite being able to do so.

Section 211.447.5(2) provides that a statutory basis for terminating parental rights exists if evidence establishes that a child has been abused or neglected. "Courts define neglect as the failure to provide, by those responsible for the care, custody, and control of the child, the proper or necessary support, education as required by law, nutrition or medical, surgical, or any other care necessary for the child's well-being." *Mo. Dep't of Soc. Servs., Children's Div. v. B.T.W.*, 422 S.W.3d 381, 392 (Mo. App. W.D. 2013) (quoting *In re M.J.H.*, 398 S.W.3d 550, 5671 (Mo. App. S.D. 2013)). In determining whether a child was abused or neglected, section 211.447.5(2) requires the trial court to make findings as to four factors. "These four factors are simply categories of evidence to be considered along with other relevant evidence, rather than separate grounds for termination in and of themselves." *B.T.W.*, 422 S.W.3d at 392 (quoting *Interest of M.J.H.*, 398 S.W.3d at 560). Nonetheless, proof of one of those factors is sufficient to support termination on the basis of neglect. *Id.*

The trial court considered the four statutory factors here. Father's complaints as to the sufficiency of the evidence concern the Judgment's findings statutorily required by section 211.447.5(2)(d). That subsection requires the trial court to make the findings as to "[r]epeated or continuous failure by the parent, although physically or financially able, to provide the child with adequate food, clothing, shelter, or education as defined by law, or other care and control necessary for the child's physical, mental, or emotional health and

14

development." Section 211.447.5(2)(d) then mandates that "[n]othing in this subdivision shall be construed to permit discrimination on the basis of disability or disease."

The Judgment followed the mandate of section 211.447.5(2)(d), finding that, despite being able to do so, Father had failed repeatedly and continuously to provide the Children with "adequate food, clothing, shelter, education, and other care necessary for their physical, mental or emotional health and development." Evidence presented at trial supported this finding. Testimony established that, before the Children entered the care of the Children's Division, Father had already experienced a stroke and was living in a rehabilitation facility, and Father admitted that he could not care for the Children so long as he lived in such a facility. But Father's admitted inability to care for the Children was not the only evidence before the trial court. In May 2019, the trial court found in the abuse and neglect proceedings that Father "ha[d] not had contact with the [C]hildren during the 18 plus months during the pendency of these proceedings, although able to do so (at a minimum by phone calls or video calls, letters or cards)." Testimony at trial established that, while Father occasionally spoke to the Children on the phone while the Children had visits with their paternal relatives, the Children had not seen Father since 2015, two years before the Children entered the Children Division's care. Such evidence established that, while able, Father had failed to maintain contact with the Children as necessary for their mental and emotional health since 2015, and Father continued to do so at the time of trial, though able to do so despite his physical limitations. As such, there was substantial evidence from which the trial court could conclude that clear, cogent, and convincing evidence established that Father had neglected the Children pursuant to section

15

211.447.5(2). There is no basis to conclude that the trial court's reference to the absence of a bond between Father and the Children as an inherent result of Father's failure to maintain contact with the Children was determinative of the trial court's conclusion that Father's parental rights should be terminated pursuant to section 211.447.5(2).

Because substantial evidence supports the trial court's conclusion that Father's parental rights should be terminated pursuant to section 211.447.5(2), we need not address the substantial evidence that supports termination of Father's parental rights pursuant to section 211.447.5(3). Father's first point on appeal is denied.

Father's second point on appeal is thus rendered moot and need not be addressed.[7] *See In Interest of J.A.F.*, 570 S.W.3d at 82 ("When the trial court finds multiple statutory grounds for termination of parental rights, in order to affirm the judgment this Court need only find that one of the statutory bases was proven and that termination was in the best interests of the child." (quoting *In re T.R.W.*, 317 S.W.3d 167, 170 (Mo. App. S.D. 2010))).

### Conclusion

The trial court's Judgment is affirmed.

Cynthia L. Martin, Judge

All concur

---

[7]In the argument portion addressing Father's second point, he argues that the trial court erroneously relied on his physical limitations, and the fact that he resides in a rehabilitation facility which is not appropriate for the Children, because those circumstances involve his past strokes, and are purportedly not predictive of the future. To the extent this argument could be read to apply to the trial court's termination of Father's parental rights pursuant to sections 211.447.5(2) and (3), we observe that Father was residing in a rehabilitation facility at the time of trial, and he admitted that he did not know when his treatment in that facility would conclude. The trial court did not err in finding that Father's inability to provide the Children with necessary care and support would continue into the foreseeable future; this was not merely a historical fact.