**MODIFIED MAY 2, 2023**



# In the
# Missouri Court of Appeals
## Western District

IN RE THE INTEREST OF: C.P.B.,   )
                                 )
Juvenile;                        )
                                 )
JUVENILE OFFICER,                )
                                 )
Respondent,                      )
                                 )   **WD85619**
MISSOURI DEPARTMENT OF           )   **OPINION FILED:**
SOCIAL SERVICES,                 )   **MARCH 21, 2023**
CHILDREN'S DIVISION,             )
                                 )
            Respondent,          )
                                 )
        v.                       )
                                 )
T.G.B.,                          )
                                 )
            Appellant.           )

**Appeal from the Circuit Court of Miller County, Missouri**
**The Honorable Matthew P. Hamner, Judge**

**Before Division One: Anthony Rex Gabbert, Presiding Judge, W. Douglas Thomson, Judge, Janet Sutton, Judge**

T.G.B. ("Father") appeals the circuit court's Judgment terminating his parental rights to C.P.B.  Father contends on appeal that the circuit court erred in its application of the law to the facts because the court's Judgment was contrary to the evidence, and the court misapplied the law under Section 211.447, RSMo. Cum. Supp. 2021, because substantial evidence did not support that Father abandoned, abused, or neglected the

child, or that termination of Father's rights was in the child's best interest, arguing that Father's incarceration was not weighed in the determination of Father's ability to interact with his child or work on his case plan. We affirm.

**Factual and Procedural Background**

C.P.B. is a male child born February 9, 2016. A year and a half prior to C.P.B.'s birth, Father was charged with possessing methamphetamine with the intent to distribute. On April 16, 2015, Father pled guilty to the Class B Felony Possession of a Controlled Substance with Intent to Distribute. He received an eight-year sentence in the Department of Corrections, with execution of the sentence suspended and Father placed on five years' probation.

When C.P.B. was eight months old and in Father's care and custody, Father and C.P.B.'s mother[1] were arrested and charged with one count of Possession of a Controlled Substance, two counts of Endangering the Welfare of a Child Involving Drugs, 1st Degree, and one count of Unlawful Use of Drug Paraphernalia. At that time, October 10, 2016, Father admitted to having used methamphetamine two days prior. The motel room where the family was staying had trash and cigarette butts within the reach of C.P.B., and smelled of trash and fecal matter. Father eventually pled guilty to Possession of a

---

[1] Mother does not appeal the circuit court's Judgment terminating her parental rights. We focus herein on the circuit court's Judgment as related to Father.

Controlled Substance, and the remaining charges were dismissed.  On August 7, 2017, Father received a seven-year sentence for that conviction.[2]

Shortly after Father's arrest, the Miller County Juvenile Officer filed for protective custody of C.P.B. and a sibling, and filed a petition to adjudicate C.P.B. as needing the State's care and treatment based on parental neglect. The Order for Protective Custody was issued October 10, 2016.  An adjudication hearing on the petition was held November 23, 2016.  Thereafter, the court assumed jurisdiction over C.P.B. pursuant to Section 211.031.1(1), thereby finding C.P.B. to need care and treatment because the parents neglected or refused to provide proper support or other care necessary for his well-being.  Legal and physical custody of C.P.B. was placed with the Missouri Department of Social Services, Children's Division.  Father was granted visitation.  The Juvenile Officer and Children's Division were ordered to develop a written service plan with Father, and to file the plan with the court for approval within thirty days.  A review hearing was scheduled for January 17, 2017.

At the time of the January 17, 2017, review hearing, Father remained in jail.  The record reflects that Father remained in custody until his release on June 4, 2018, and had no contact with C.P.B. while incarcerated.  During Father's incarceration, he was involved in a drug treatment program.  Father's first visit with C.P.B. after his release was

---

[2] The trial transcript shows that the court took judicial notice of Father's criminal cases as reflected on Case.net pursuant to Section 490.130.  Father's criminal history was also provided in a "TPR Summary" that was filed with the court and is included in the record on appeal.

July 5, 2018.  Moreover, Father had no communication with C.P.B. for twenty-one months, during which time C.P.B. aged from eight months to two and a half years old.

From July 5, 2018 to January 23, 2019, the record reflects that Father had between fifteen to nineteen one-hour visits with C.P.B.  Individuals supervising the visits expressed concern during the later visits that Father's demeanor had changed significantly from when visits first started.  Father would seem "off" during the visits and had little patience with C.P.B. and his sibling.  Father's visits decreased significantly over time, as he would not show up for visits and would call with excuses as to why he could not attend.  Father was advised by the Guardian ad Litem and/or Children's Division and/or the Juvenile Officer that, pursuit of termination of Father's parental rights would be necessary if Father did not remain sober, visit his children, and obtain steady employment and stable housing to support himself and the children.

During the time Father visited the children, Father never complied with requests from the Children's Division to submit to random drug testing.  Father was required to test when he met with his probation officer, however, and on September 19, 2018, Father tested positive for THC and Methamphetamines.  On September 27, 2018, Father tested positive for THC and Methamphetamines, with no decrease in levels from his prior drug test.  On October 8, 2018, Father tested positive for THC and Methamphetamines, with no decrease in levels from his prior drug test.  On November 6, 2018, Father self-reported that he would be positive for drugs if tested.

The record shows that Father's last visit with C.P.B. was on or about January 23, 2019. Shortly thereafter, Father committed various crimes for which he remained incarcerated at the time of the termination of parental rights hearing. On April 4, 2019, Father was charged with the class D felony of stealing a single axle trailer in Morgan County. Around that same time, Father was charged with the class D felony of possession of a controlled substance. On June 8, 2020, Father pled guilty to one count of stealing for the trailer theft, and also possession of a controlled substance as a prior and persistent offender. Father was sentenced to five years' incarceration for the stealing conviction, and nine years' incarceration for the possession conviction, with the sentences to run concurrently. On July 9, 2019, Father was charged in Texas County with the April 20, 2019, theft of a 2010 Toyota Tundra, a 12-gauge shotgun, a 9 mm Sccy handgun, and a 9 mm Smith and Wesson handgun. On January 5, 2021, Father pled guilty to those charges and was sentenced to five years' incarceration for stealing the motor vehicle, with his sentence to run consecutive to the four years he received for stealing the firearms. Some of Father's convictions required drug treatment, and on March 10, 2021, Father was released unsuccessfully from his court-ordered drug treatment program for being found with papers that tested positive for cannabinoids, as well as a cigarette. Father completed a "Partners in Parenting" class on August 7, 2020.

Father made minimal efforts to maintain contact with C.P.B. after he was incarcerated. The record reflects that Children's Division workers repeatedly encouraged Father to maintain contact through letters. A notation by a Children's Division worker

5

from February 21, 2021, indicates that Father reported mailing the child a letter the previous year and was angry he received no response. Aside from this notation, the record reflects that the only correspondence sent by Father to C.P.B. occurred after the Children's Division petitioned the court to terminate Father's parental rights: November 23, 2021, December 7, 2021, December 21, 2021, an unknown date, and March 15, 2022. The November 2021 through March 2022 letters were sent directly to Father's attorney to be forwarded to C.P.B. In February of 2021, which was several months prior to termination of parental rights being filed, Father's attorney advised the Children's Division that the attorney had mailed Father a letter monthly for a year and never received a response. Father was ordered to pay $2 per month in child support beginning January 30, 2017, and never made any payments.

On November 1, 2021, the Children's Division petitioned to terminate Father's parental rights. The Petition alleged that C.P.B. had previously been adjudicated as neglected by Father and, pursuant to Section 211.447.5(2)(d), Father repeatedly and continuously failed, although physically able, to provide C.P.B. with adequate food, clothing, shelter, or education as defined by law, or other care and control necessary for the child's physical, mental, or emotional health and development. The Petition also alleged that Father was presumed unfit to be a party to the parent and child relationship pursuant to Section 211.447.5(5)(e), because C.P.B. had been in foster care for at least fifteen of the twenty-two months immediately preceding the filing of the Petition.

Trial was held April 22, 2022. On July 14, 2022, the circuit court entered its "Judgment, Order, and Decree for Termination of Parental Rights," therein concluding that grounds for terminating Father's parental rights existed under Sections 211.447.5(1), (2), and (5). The court found termination of Father's parental rights to be in C.P.B.'s best interest after considering the factors set forth in Section 211.447.7. This appeal follows.

**Standard of Review**

To terminate parental rights upon a petition filed by the Children's Division, the circuit court must find that there is at least one statutory ground for termination supported by clear, cogent, and convincing evidence, and find that the termination is in the best interests of the child by a preponderance of the evidence. *See* § 211.447; *In re B.H.*, 348 S.W.3d 770, 772 (Mo. banc 2011) (internal citation omitted); *In re A.M.S.,* 272 S.W.3d 305, 308 (Mo. App. 2008). "Clear, cogent, and convincing evidence" is that which "instantly tilts the scales in favor of termination when weighed against the evidence in opposition and the finder of fact is left with the abiding conviction that the evidence is true." *In re K.A.W.*, 133 S.W.3d 1, 12 (Mo. banc 2004).

Upon review, we must affirm the circuit court's judgment "unless there is no substantial evidence to support it, it is contrary to the evidence, or it erroneously declares or applies the law." *Id*. at 11. We review any conflicting evidence in the light most favorable to the circuit court's judgment, and defer to the circuit court's judgment on factual issues such as the credibility of witnesses. *Id.* at 11–12. "When the trial court finds multiple statutory grounds for termination of parental rights, in order to affirm the

7

judgment this Court need only find that one of the statutory bases was proven and that the termination was in the best interests of the child." *In Re T.R.W.,* 317 S.W.3d 167, 170 (Mo. App. 2010) (internal quotation marks and citations omitted).

**Point on Appeal**

In Father's sole point on appeal, Father contends the circuit court erred in its application of the law to the facts because the court's Judgment was contrary to the evidence, and the court misapplied the law under Section 211.447 because substantial evidence did not support that Father abandoned, abused, or neglected the child, or that termination of Father's rights was in the child's best interest, arguing that Father's incarceration was not weighed in the determination of Father's ability to interact with his children or work on his case plan.

As a preliminary matter, the Children's Division contends that Father's appeal suffers from various briefing deficiencies, including a multifarious point relied on. The Children's Division asks that Father's appeal be dismissed. We agree that Father's point relied on is multifarious. Rule 84.04(d) requires each distinct claim of error to be raised in a separate point. A point relied on is "multifarious" in violation of Rule 84.04, and preserves nothing for appellate review, when it contains multiple, independent claims. *Macke v. Patton*, 591 S.W.3d 865, 869 (Mo. banc 2019). Further, issues raised only in the argument portion of the brief and not contained in a point relied on are not preserved for appellate review. *Hawley v. Tseona*, 453 S.W.3d 837, 842 n.6 (Mo. App. 2014). Here, Father makes several claims of error in one point relied on, and also makes arguments in

8

the body of his brief that are not included within the point relied on.  Nevertheless, we "prefer to resolve an appeal on the merits of a case rather than to dismiss an appeal for deficiencies in the brief." *Payne v. Markeson,* 414 S.W.3d 530, 545 (Mo. App. 2013).  As we can ascertain Father's arguments despite any deficiencies, and can decide the matter without advocating for the appellant, we decline to dismiss the appeal for the deficiencies alleged by the Children's Division.

The circuit court terminated Father's parental rights on several grounds, including grounds specified under Sections 211.447.5(1), 211.447.5(2), 211.447.5(5), and found termination to be in the child's best interest.  Father challenges the court's Judgment on all grounds.  As we need only find one statutory ground proven to affirm the court's Judgment when termination is in the best interests of the child, we address the court's Judgment as to Section 211.447.5(2).

Section 211.447.5(2) allows the court to terminate parental rights to a parent when the child has been abused or neglected.   In determining whether to terminate parental rights under this subdivision, the court is required to consider the following factors:  a) whether the parent has a mental condition with no likelihood of reversal that renders the parent unable to knowingly provide the child the necessary care, custody, and control; b) whether the parent has a chemical dependency which prevents the parent from consistently providing the necessary care, custody and control of the child and which cannot be treated so as to enable the parent to consistently provide such care, custody, and control; c) severe or recurrent acts of physical, emotional or sexual abuse toward the

9

child or any child in the family by the parent, or by another under circumstances that the parent knew or should have known were being committed; d) and repeated or continuous failure by the parent, although physically or financially able, to provide the child with adequate food, clothing, shelter, or education as defined by law, or other care and control necessary for the child's physical, mental, or emotional health and development. § 211.447.5 (2) (a)(b)(c)(d). These factors "are not separate grounds for termination by themselves, but rather categories of evidence, that the court may consider along with all other relevant evidence in determining whether grounds for termination exist" under Section 211.447.5(2). *In re S.Y.B.G.*, 443 S.W.3d 56, 60 (Mo. App. 2014). Although the court should consider and make findings on all factors, proof of just one factor is sufficient to support termination of parental rights. *Id.* (*See In Interest of A.F.*, 543 S.W.3d 90, 97 (Mo. App. 2018) ("Even though four factors are listed in § 211.447.5(2), the existence of any one of those factors is a sufficient basis for termination of parental rights.")).

C.P.B. was initially found to have been neglected by Father in October of 2016. In support of terminating Father's rights under Section 211.447.5(2), the court found that Father has a chemical dependency under Section 211.447.5(2)(b) that prevents him from consistently providing C.P.B. with the necessary care, custody, and control, and which cannot be treated so as to enable Father to do so. The court also found that, under Section 211.447.5(2)(d), Father failed to adequately provide for C.P.B. so as to support his physical, mental, or emotional health and development. In support of this finding, the

10

court found that Father had, a) failed to provide C.P.B. with necessities such as food, clothing, or educational items, b) failed to maintain consistent visitations with C.P.B., and c) failed to make child support payments as ordered by the court.

The record reflects that Father has a long history of substance abuse which has prevented him from providing proper care for C.P.B. Father was in possession of methamphetamines a couple of years prior to C.P.B.'s birth. Father's eight-year sentence was suspended and he was placed on probation. A reasonable parent would understand that, failure to comply with the law while on probation would result in the parent being separated from his or her child. Yet, while on probation for possession of methamphetamines, Father was arrested for possessing drugs, and Father admitted to having used methamphetamines two days prior. C.P.B. was in Father's care and custody when Father was arrested. Father's dependency to drugs and/or choice to use and possess drugs essentially led to Father's abandonment of C.P.B. for the following two years while Father was incarcerated. Father was involved in a drug treatment program during this incarceration, which was apparently ineffective as Father continued to have issues with drug use upon his release.

Father was released from prison June 4, 2018. A condition for Father's release was that he remain drug free. Father understood that failure to remain drug free would place him back into custody and limit his ability to visit and provide proper care, custody, and control for C.P.B. Three months after his release, however, Father tested positive for methamphetamine and cannabis. Father's last visit with C.P.B. was January 23, 2019.

Not long thereafter, Father was again incarcerated for committing various crimes and violating his parole. On June 8, 2020, Father pled guilty to possession of a controlled substance as a prior and persistent offender. On March 10, 2021, Father was released unsuccessfully from his court-ordered drug treatment program for being found with a cigarette and with papers that tested positive for cannabinoids. Father was aware that drug treatment had been requested by the Children's Division so that Father could establish himself as a safe caretaker for C.P.B. At the time of trial, the record reflects that Father may have entered another drug treatment program while incarcerated, but information regarding this is unclear as Father failed to file trial exhibits with this court.[3]

Father argues that the only evidence in the record that Father has a chemical dependency is the fact that Father voluntarily attended treatment while incarcerated. We disagree. The record reflects proof of Father's drug *use* from at least 2016,[4] when he admitted to using methamphetamines just prior to C.P.B.'s removal from his care, to 2021, when he was dismissed from a prison drug program for possessing drugs. We also disagree with Father's contention that no evidence in the record shows that Father has a chemical dependency that would impact his parenting. Father's drug issues caused

---

[3] "When exhibits necessary to the determination of a point on appeal are omitted from the record, such evidentiary omissions will be taken as favorable to the trial court's ruling and unfavorable to the appeal." *Interest of D.T.H.*, 652 S.W.3d 738, 751 (Mo. App. 2022) (internal citation and quotation marks omitted).

[4] Father was found in *possession* of methamphetamine, with an intent to distribute, in 2014.

C.P.B. to initially be placed in State custody, and further prevented parent/child reunification when Father continually tested positive for drugs after release from custody. During the time that Father was testing positive for drugs, he was often distracted during his one-hour visitations with his children, appeared "off" to individuals supervising the visits, and began missing scheduled visitations. The record shows that the Children's Division planned to increase Father's visits just prior to Father beginning to miss visits and testing positive for drug use.

We do find little evidence, however, in the record as to the *treatability* of Father's drug issues, as nothing in the record indicates that Father was specifically assessed for this; Father did not seek treatment as requested by the Children's Division during the time he was not incarcerated. Nevertheless, even if Father's chemical dependency is treatable, Father's continued drug use and failure to seek treatment contributed to his failure to support C.P.B.'s physical, mental, and emotional health and development. Substantial evidence supports the court's findings that Father, although physically able, failed to provide C.P.B. with necessities such as food, clothing, or educational items, failed to maintain consistent visitations with C.P.B., and failed to make child support payments as ordered by the court.

During the five years between when C.P.B. was placed in Children's Division custody to when the Children's Division filed for termination of parental rights, Father had only fifteen to nineteen hours of contact with C.P.B. – less than one full day out of over 1,800 days. Many of those later one-hour visits were concerning to visitation

13

supervisors because Father was on his phone, distracted, appeared "off", and exhibited little patience with his children. The record reflects that Father's failure to attend visitations caused his children to experience disruption and disappointment when the children arrived for visits and waited for Father, but Father never showed up.

Although Father was continually encouraged to maintain contact with C.P.B. via letters, during the nearly three years that elapsed from when Father last visited C.P.B. to when the Children's Division filed to terminate parental rights, Father reported writing one letter to C.P.B. Father's additional five letters were sent after termination proceedings commenced. Father was provided an attorney to assist Father with reunification efforts, and Father failed to respond to the attorney's monthly correspondence for a year prior to the termination petition being filed. Father was ordered to pay $2.00 per month child support starting July 15, 2017. Although Father reported to be working during times that he was not incarcerated, Father never paid child support.

Moreover, substantial evidence in the record supports the court's conclusions that, 1) there are no emotional ties between Father and C.P.B., 2) Father has not maintained regular visitation or contact with C.P.B., 3) Father has not provided for the cost of care of maintenance of C.P.B. when financially able to do so, 4) additional services are unlikely to bring about lasting parental adjustment enabling a return of C.P.B. to Father within an ascertainable period of time, 5) Father has demonstrated a disinterest in or lack of commitment to C.P.B. since C.P.B. entered care in 2016, and 6) Father has

14

been convicted of a felony that resulted in Father being incarcerated, and Father has done nothing to show that, upon his release, the child could be reunified with Father in a reasonable or ascertainable amount of time. Moreover, we find clear and convincing evidence in the record to support the circuit court's Judgment of termination of parental rights pursuant to Section 211.447.5(2).

Upon reviewing the record, including the totality of the circumstances apparent from the evidence, we additionally find that a preponderance of the evidence supports the court's conclusion that termination of Father's parental rights is in C.P.B.'s best interest. C.P.B. was neglected by Father, and since that initial finding of neglect, Father has failed to adequately provide for C.P.B. so as to support his physical, mental, or emotional health and development. When the termination of parental rights petition was filed, C.P.B. was nearly five years old. Father's only significant contact with C.P.B. was in C.P.B.'s first eight months of life. The following four years, Father spent only fifteen to nineteen hours with C.P.B. Throughout those years, C.P.B. lived in more than one alternative care placement, and Father's unwillingness or inability to put himself in a position to care for C.P.B. deprived C.P.B. of the comfort and stability of a permanent home. The record reflects that Father's minimal contact with C.P.B. resulted in there being no parent/child relationship between Father and C.P.B.

## Conclusion

We conclude, therefore, that the circuit court did not err in terminating Father's parental rights pursuant to Section 211.447.5(2) or in finding termination of parental

15

rights to be in the best interest of C.P.B. pursuant to Section 211.447.6.  We affirm the circuit court's Judgment.[5]

_____

Anthony Rex Gabbert, Judge

All concur.

---

[5] As we need only find one statutory ground to affirm the court's judgment, we do not address and take no position on Father's contention that the court erred in terminating his parental rights on other Section 211.447 grounds.

16